UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAMELA GOODWIN, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 21-cv-806 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

The eight individual plaintiffs, who separately convened in Washington, D.C., on June 1, 2020, to protest police brutality and misconduct, Compl. ¶¶ 1–2, 23, ECF No. 1, initiated this action on March 25, 2021, raising claims, under 42 U.S.C. § 1983, for violations of the First and Fourth Amendments, and for assault and battery and negligence per se against defendants, the District of Columbia ("the District"), Peter Newsham, then-Chief of the Metropolitan Police Department ("MPD") at the time of the events at issue, and John Doe Officers 1-50 ("the Doe MPD Officers"), who are yet to be identified MPD officers and supervisors, for allegedly using excessive force and retaliatory abusive acts against peaceful protesters, thereby causing plaintiffs' injuries, *id.* ¶¶ 1, 18–20.  Defendants have not yet filed any responsive pleading to the Complaint.  *See* Min. Order (Apr. 16, 2021) (granting defendants' unopposed motion for extension of time to respond until May 19, 2021).

To ascertain the identities of the Doe MPD Officers, plaintiffs now move for leave to conduct limited expedited discovery and seek an "order requiring Defendant District of Columbia to provide expedited discovery sufficient to identify the [Doe MPD Officers] who used force against Plaintiffs as alleged in their Complaint, by May 17, 2021," so that plaintiffs

1

are able to "preserve their ability to bring any claim for assault and battery against the identified officers by the June 1, 2021 statute of limitations" deadline. Pls.' Mot. Leave to Conduct Limited Expedited Discovery for the Purpose of Identifying "John Doe" Defs. ("Pls.' Mot.") at 1, ECF No. 11. The District opposes this motion. For the reasons provided below, the plaintiffs' motion is granted.

I. BACKGROUND

Only the factual and procedural background relevant to resolving the pending motion for leave to conduct limited expedited discovery is summarized here. The complaint alleges that plaintiffs joined others in several District locations on June 1, 2020, to protest peacefully against police brutality and misconduct in the wake of the murder by police of George Floyd in Minnesota and of Tony McDade in Florida. Compl. ¶¶ 21–25. Though the protests were peaceful, plaintiffs allege that Doe MPD Officers, at the direction of defendant Chief Newsham, engaged in conduct resulting in their injuries. Specifically, plaintiffs Goodwin, Lane, Lazo, Medina-Tayac, Pearlmutter and Surio participated in a protest near the White House, *id.* ¶ 24, while plaintiffs Remick and Troper separately attended a vigil for Tony McDade at different location, but then "marched alongside other protesters toward the demonstration near the White House," *id.* ¶ 25. Later, as the demonstration at the White House was dispersing, plaintiffs headed northwest with other protesters, first toward Thomas Circle and then toward 14th Street NW, to return home. *Id.* ¶ 26. While on 14th Street NW, MPD officers first confronted plaintiffs, and "used aggressive intimidation tactics to try to prevent [plaintiffs and protesters] from engaging in their protest activities," *id.* ¶ 28, including officers preventing protesters from accessing bottles of water from stations intended to benefit protesters, closely following protesters with police cars and trying to drive police cars through the group of protesters, *id.*

As plaintiffs and other demonstrators approached 14th Street NW and Florida Avenue, MPD officers surrounded protesters, issuing commands to disperse or return home but, at the same time, blocking side streets to prevent plaintiffs and other protesters from leaving the police perimeter. *Id.* ¶ 29. Plaintiffs attempted to move with the crowd along 14th Street NW within the police perimeter, but MPD officers "forced the group to turn west down Florida Avenue, south down 15th Street NW, and then onto a side street, Swann Street NW, between 14th and 15th Streets." *Id.* ¶ 35.

Once the demonstrators, including plaintiffs, were herded onto Swann Street, MPD officers physically surrounded and enclosed the group, preventing anyone from leaving—a policing technique referred to as "kettling." *Id.* ¶¶ 36–37. At this point, without "provid[ing] Plaintiffs or other demonstrators time to disperse, indicat[ing] a route for dispersal, or inform[ing] them that refusal to disperse would subject them to arrest," *id.* ¶ 41, a group of MPD officers, "dressed in riot gear and armed with shields, batons, pepper spray and other weapons," *id.* ¶ 42, "almost immediately, and without warning, brandished their shields and batons and began swinging them toward Plaintiffs and other demonstrators," while yelling "move back" to enclose plaintiffs and demonstrators in an increasingly smaller space, *id.* ¶ 43. While blocked on Swann Street, MPD officers attacked plaintiffs by "deploying excessive amounts of pepper spray at them," *id.* ¶ 45, causing plaintiffs to experience "intense burning sensations in their lungs, eyes, faces, throats, and chests; severe coughing and difficulty breathing; and disorientation," *id.* ¶ 48. One MPD officer violently pushed other demonstrators against plaintiff Medina-Tayac, making him fall to the ground, which led to him being stepped on, *id.* ¶ 53; another MPD officer "repeatedly struck Plaintiff Remick with a baton, landing blows with sufficient force to cause bruising on their arms and back," *id.* ¶ 54; and another MPD

officer "struck [plaintiff Surio] in the chest and abdomen with a baton," causing "contusions, welts, and bruising," *id.* ¶ 55.

Plaintiffs Medina-Tayac, Pearlmutter, Remick, and Surio, were then arrested and detained between two to four hours on Swann Street, *id.* ¶¶ 61, 64, 67, 71, 73, in tight and painful zip ties, *id.* ¶¶ 65, 68, 72, before being transported to a police academy facility, where plaintiffs Medina-Tayac and Pearlmutter were forced to stand outside for almost six hours pending processing, *id.* ¶¶ 66, 70. While waiting, plaintiff Surio asked to be taken to the hospital for her injuries, but MPD officers discouraged her from seeking medical attention before relenting and taking her for treatment. *Id.* ¶¶ 75–76. Also, during this period, MPD officers did not provide adequate food, teased and taunted protesters about their refusal to provide food or water, *id.* ¶ 80, and denied plaintiffs Medina-Tayac and Pearlmutter bathroom access for eight hours, *id.* ¶¶ 82, 83. Plaintiff Remick was denied food, water and bathroom access for four hours, *id.* ¶ 84; and plaintiff Surio had no access to food while in custody, which meant she was not able to eat until her release at 10:00 AM the morning following her arrest, *id.* ¶ 85.

Unable to identify the individual MPD officers and supervisors responsible for these actions on 14th Street NW and Swann Street NW, and at the police academy facility, plaintiffs identified them as "John Doe Officers 1–50" in the complaint. *Id.* ¶ 1. Plaintiffs served the District with their complaint promptly on March 26, 2021 and simultaneously asked the District to "provide the names of the John Doe defendants identified in Plaintiffs' Complaint." Pls.' Mot. at 2. Specifically, plaintiffs requested, by April 9, 2021, the names of the: "(1) officers participating in the arrest or seizure of Plaintiffs; (2) officers involved in transporting and processing arrestees from the 1400 block of Swann Street NW on June 1, 2020; (3) officers who used force, deployed pepper spray or completed use of force reports for actions taken on the

4

1400 block of Swann Street NW on June 1, 2020; (4) officers about whom a complaint for use of excessive force was filed for actions taken on the 1400 block of Swann Street NW on June 1, 2020; and (5) supervisory officers on the 1400 block of Swann Street NW and the Maurice J. Turner, Jr., Metropolitan Police Academy (where Plaintiffs were transported for processing) on June 1, 2020." Pls.' Mot. at 2–3; *see* Pls.' Mot., Ex. 1, Letter from Pls.' Counsel to the District of Columbia Off. of Att'y Gen. ("OAG") (Mar. 26, 2021) ("Pls.' Letter") at 1–2, ECF No. 11-1.

Initially, the District declined to provide plaintiffs with any of the requested information, describing the requests as "far too broad and burdensome," and suggested that the parties "might be able to work something out" if the requests were narrowed. Pls.' Reply to District's Opp'n to Pls.' Mot. ("Pls.' Reply"), Ex. A, Email from District of Columbia OAG to Pls.' Counsel (Apr. 8, 2021) ("April 8, 2021 Email"), ECF 14-1. During the subsequent conferral process, the District agreed to provide the names of the officers who arrested plaintiffs, transported them for processing, and the supervisors present during the events of June 1, 2020, but declined to provide the names of officers who filed use of force reports or had force-related complaints lodged against them. *See* Pls.' Reply, Ex. B, Email Exchange between the District of Columbia OAG and Pls.' Counsel (Apr. 15–21, 2021) ("April 15–21, 2021 Emails") at 5–6, ECF No. 14-2; Pls.' Mot at 3; Def. District of Columbia's Opp'n to Pls.' Mot. ("Def.'s Opp'n") at 2, ECF No. 13.

In response, plaintiffs noted that information about "who used force may be even more important [than the other discovery sought] for amending [plaintiffs'] complaint," April 15–21, 2021 Emails at 5, and the District agreed to be "open to considering" plaintiffs' suggestions about how the District could provide "relevant information [about] the identities of the officers who used force against [plaintiffs] . . . in a way that is useful without having to engage in a burdensome process," *id.* at 3. To this end, plaintiffs promptly made clear that the requests for

5

use of force reports and excessive force complaints were the narrowest terms plaintiffs could propose without knowing "what information [the District has]," but indicated plaintiffs would be open to considering "anything that [the District thought] would be more narrow than what [plaintiffs had] asked for." *Id.* at 2. Plaintiffs unsuccessfully attempted to schedule a final phone call with counsel for the District on April 22, 2021, Pls.' Reply at 3, ECF No. 14, and then filed this motion for leave to conduct limited discovery, which motion became ripe for resolution on May 7, 2021.

**II.    LEGAL STANDARD**

Typically, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by a court order." FED. R. CIV. P. 26(d)(1). "In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint–much less confer with the defendant–without obtaining identifying information from a third party, 'the only potential avenue for discovery is [a court order under] Rule 26(d)(1).'" *Strike 3 Holdings, LLC v. Doe* ("*Strike 3*"), 964 F.3d 1203, 1207 (D.C. Cir. 2020) (alteration in original) (quoting *AF Holdings, LLC v. Doe*, 752 F.3d 990, 995 (D.C. Cir. 2014)). "A district court's discretion to order discovery, whether before or after the parties have conferred, is cabined by Rule 26(b)'s general limitations on the scope of discovery," permitting "discovery only of nonprivileged materials that are 'relevant to [the] party's claim or defense and proportional to the needs of the case." *Id.* (alteration in original) (quoting FED. R. CIV. P. 26(b)(1)).

Upon finding that requested discovery is relevant, Rule 26's proportionality prong "requires district courts in all discovery matters 'to consider a number of factors potentially relevant to the question of undue burden,' including: (1) whether the discovery sought is

'unreasonably cumulative or duplicative'; (2) whether the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive'; and (3) whether the discovery sought is 'proportional to the needs of the case,' taking into account '[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Buzzfeed, Inc. v. United States Dep't of Justice*, 318 F. Supp. 3d 347, 358 (D.D.C. 2018) (first quoting *Watts v. SEC*, 482 501, 509 (D.C. Cir. 2007); and then quoting FED. R. CIV. P. 26(b)(1), (2)); *see also Strike 3*, 964 F.3d at 1207 (noting that, under Rule 26, "[c]ourts are directed to assess proportionality by reference to" these factors); FED. R. CIV. P. 26(b).[1]

### III.   DISCUSSION

Plaintiffs argue that the applicable Rule 26 standard is "easily satisf[ied]" such that their requests should be granted. Pls.' Mot. at 5. The District counters that plaintiffs' requested

---

[1] Federal Rule of Civil Procedure 26(b) used to include a "good cause" standard for court-ordered discovery with a scope broadly defined by "the subject matter involved in the action." *See* FED. R. CIV. P. 26(b)(1) (2014) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). The 2015 amendments eliminated Rule 26(b)'s provision "authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action," *id*. advisory committee's note to the 2015 amendment, and "replaced it with the overarching relevance and proportionality standard," *Strike 3*, 964 F.3d at 1207 n.2; *see also In re Clinton*, 973 F.3d 106, 114 n.2 (D.C. Cir. 2020) (noting that 2015 Amendment "'deletes the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action'" and "narrowed" Rule 26) (quoting FED. R. CIV. P. 26 advisory committee's note to the 2015 amendment). Despite this rule change, the District urges application of the good-cause standard, including consideration of "(1) whether a preliminary injunction is pending; (2) the breadth of discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." Def.'s Opp'n at 2–3 (quoting *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (quoting *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014))). Plaintiffs point out that the District's reliance on *Attkinson* is misplaced, but also contend that they succeed under either standard, *see* Pls.' Mot. at 4 n.2, since (1) the first *Attkisson* factor is irrelevant because no preliminary injunction is pending, Pls.' Reply at 7; (2) the requested discovery is not overly broad or overly burdensome, *id.*; and (3) the purpose of the expedited discovery requests to identify Doe MPD Officers prior to the expiration of the statute of limitations is to prevent the "irreparabl[e] harm[ that would occur] without expedited discovery," *id.* at 9 (quoting *Attkisson*, 113 F. Supp. 3d at 164). Despite the amount of ink spilled by the parties on application of the *Attkisson* factors, the factors relevant to the current relevance and proportionality standard is applied here.

expedited discovery is "too broad," Def.'s Opp'n at 3, "burdensome," *id.* at 5, and not justified, *id.* at 6 (contending plaintiffs' reason for seeking expedited discovery "is not persuasive"). Plaintiffs have the better arguments here, as demonstrated by review of the express factors set out in Federal Rule of Civil Procedure 26(b).

      A.      **Relevance of Use of Force Information About Doe MPD Officers**

When a plaintiff seeks "immediate, court-ordered discovery to identify an anonymous defendant," courts need only "determine whether the plaintiff should have the opportunity to name that defendant in the first place." *Strike 3*, 964 F.3d at 1210. It is "well established that plaintiffs are permitted to proceed against John Doe defendants so long as discovery can be expected to uncover the defendant[s'] identity." *Id.* (citing *Newdow v. Roberts*, 603 F.3d 1002, 1010–11 (D.C. Cir. 2010)). For this reason, plaintiffs in analogous proceedings have been permitted to proceed with limited expedited discovery prior to the parties' discovery planning conference required under Federal Rule of Civil Procedure 26(f). *See, e.g.*, Order, *Del Carmen Salama-Tobar v. D.C.*, Civil Action No. 21-cv-500 (CJN) (D.D.C. Mar. 8, 2021) (granting plaintiffs' motion for expedited discovery to serve subpoenas and interrogatories in order to identify John Doe Officers); Min. Order (Nov. 27, 2019), *Robinson v. Hardy*, Civil Action No. 19-cv-3070 (CJN) (D.D.C. Nov. 27, 2019) (granting plaintiffs' motion for leave for expedited discovery to subpoena defendant for the limited purpose of seeking name and contact information for defendant John Doe).

The expedited discovery plaintiffs seek is cabined to a list of MPD officers who filed use of force reports or have force-related complaints against them related to the events at the 1400 block of Swann Street NW on June 1, 2020. This discovery bears directly on plaintiffs' assault and battery allegations and is "necessary to reveal the defendant[s'] identiti[es] and [allow plaintiffs] to begin litigating" their claims. *Strike 3*, 964 F.3d at 1210. This relevance

consideration weighs heavily in favor of granting plaintiffs prompt expedited access to this information before expiration of the limitations period bars them from naming the Doe MPD Officers, who allegedly engaged in assault and battery and also violations of § 1983.  *See* Compl. ¶¶ 99–101 (alleged violation of § 1983 against John Doe Officers 1-50 for use of "excessive and unreasonable force, []under color of state law" by, *inter alia*, "trapping, deploying pepper spray against, and physically assaulting Plaintiffs").

The District contends that plaintiffs' requests for the names of "*all* officers 'who used force, deployed pepper spray or completed use of force reports for actions taken on the 1400 block of Swann Street NW on June 1, 2020,'" is overbroad and not narrowly tailored to those "officers who used force against Plaintiffs."  Def.'s Opp'n at 3 (emphasis in original) (quoting Pls.' Mot. at 2).  As support, the District distinguishes plaintiffs' requests as insufficiently specific compared to the cases on which plaintiffs rely, where the requests "were seeking to identify the owners of *specific* IP addresses that were directly linked to alleged copyright infringement."  *Id.* at 4 (emphasis provided) (citing *Strike 3*, 964 F.3d at 1207; *Malibu Media, LLC v. Doe*, 177 F. Supp. 3d 554, 557 (D.D.C. 2016); *Exquisite Multimedia, Inc. v. Doe*, No. 11-1976 (RWR/JMF), 2012 U.S. Dist. LEXIS 6969 at *1 (D.D.C. Jan. 19, 2012); and *Warner Bros. Records v. Doe*, 527 F. Supp. 2d 1, 3 (D.D.C. 2007)).  The District's distinction might be determinative if laser-targeted specificity was the applicable standard for relevancy in the context of identifying the proper defendant, but it is not, as the D.C. Circuit's recent decision in *Strike 3* makes amply clear.

Certainly, plaintiffs may not "'abuse[] the discovery process' by seeking irrelevant information" if they have "no 'realistic chance of successfully suing' the defendant."  *Strike 3*, 964 F.3d at 1210–11 (quoting *AF Holdings LLC*, 752 F.3d at 997).  Yet, information may qualify

as relevant even if not admissible, FED. R. CIV. P. 26(b)(1), and if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action," FED. R. EVID. 401.  In *Strike 3*, the D.C. Circuit reversed the district court's denial of plaintiff's requested discovery of subscriber information for the IP address used to allegedly download and infringe a copyrighted movie based on "the risk that someone other than the IP address subscriber with access to the IP address—such as a family member or roommate—may have been responsible for the alleged infringement."  *Strike 3,* 964 F.3d at 1207.  The Circuit found that this reasoning "misstates the relevant inquiry when a plaintiff seeks immediate, court-ordered discovery to identify an anonymous defendant," *id*. at 1210, noting "[a]t this stage, the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place," *id*.  Thus, "[t]he mere fact that discovery *may* demonstrate that the subscriber is not the proper defendant is no basis to close the courthouse doors before Strike 3 can step inside."  *Id.* at 1212 (emphasis in original).  Since the Court "[could not] conclude there [was] no 'realistic chance' the discovery Strike 3 sought [would] yield information relevant to its suit or that Strike 3 could not state a plausible claim against the IP address subscriber if the suit reaches the Rule 12(b)(6) phase," the requested discovery was appropriate and the denial was an abuse of discretion.  *Id*.

Similarly here, plaintiffs' requests are realistically tethered to uncovering the identities of the Doe MPD Officers on the scene at the locations where plaintiffs claim they suffered injury on June 1, 2020, just as the requested discovery at issue in *Strike 3* was intended to get closer to the identity of the person using the IP address for allegedly infringing activity, even if the subscriber turned out not to be that person.  Plaintiffs "do not know what information [the District] has and

10

[cannot] say what . . . is more narrow than what [they have] asked for," April 15–21, 2021 Emails at 2, and, in fact, the District says it has been unable to provide another, more specific alternative over the last two months, *see id.* at 2–6. Plaintiffs are willing to accept whatever information reasonably available to identify the Doe MPD Officers allegedly responsible for assault and battery on the plaintiffs. *Id.* at 2 ("We want information to be able to identify the individual officers and supervisors who used force so we can identify and name potential Defendants . . . [i]f you have anything that you think that would be more narrow than what we've asked for that would get us there . . . that would work for us.").

Nonetheless, the District contends that providing the "list of every officer who used force against anyone at any point in time on Swann Street" is overbroad and would lead to "either (a) Plaintiffs impermissibly including every officer who used force on Swann Street as a defendant, regardless of whether they actually used force against any Plaintiff, or (b) follow-up requests to determine which of the officers who used force did so against Plaintiffs, amounting to full-blown discovery." Def.'s Opp'n at 4–5. This concern about overbreadth must be assessed against the alternatives available to plaintiffs, who could have requested, for example, the names of all MPD officers on duty during the relevant timeframe on June 1, 2020, or the names of those MPD officers present at this time in the precise locations identified in the complaint where plaintiffs' alleged injuries occurred at the hands of Doe MPD Officers. Instead, plaintiffs have made a far narrower request, focused on a list of MPD officers who filed use of force reports or generated force-related complaints related to the events at the 1400 block of Swann Street NW on June 1, 2020. *See* April 15 – 21, 2021 Emails at 3, 6 (District denying plaintiffs' requests for information on all officers who used force on Swann Street).

In any event, neither concern raised by the District appropriately bars the discovery plaintiffs seek at this stage. First, "the mere possibility that an unnamed defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1) motion that otherwise satisfies Rule 26's discovery standards." *Strike 3*, 964 F.3d at 1211. Thus, the District's expressed concern that plaintiffs might use the discovery sought to charge officers against whom they do not have cognizable claims is not a basis at this early stage to deny plaintiffs' requests. Second, as plaintiffs point out, "[t]hat Plaintiffs may hypothetically have follow-up questions to assist them in identifying John Doe officers does not change [the] analysis," Pls.' Reply at 8, which is whether "the discovery [is] necessary to reveal the defendant[s'] identity," *Strike 3 Holdings, LLC*, 964 F.3d at 1210.

In sum, plaintiffs' requested expedited discovery is relevant to identifying the Doe MPD Officers who should be named as defendants for their assault and battery claims and § 1983 claims and is not so overbroad as to render the discovery irrelevant to these claims.

> **B.     Discovery of Use of Force Information About MPD Officers Does Not Impose Undue Burden and is Proportional to Needs of the Case**

Turning next to whether the requested discovery is "proportional to the needs of the case," FED. R. CIV. P. 26(b)(1), the factors pertinent to this analysis heavily favor plaintiffs.[2] To begin, "the importance of the issues at stake in the action" and related "importance of the discovery in resolving the issues," are apparent. This case involves serious claims of use of excessive force and misconduct by MPD officers in their interactions with peaceful protesters. Not even the District disputes that, without expedited discovery, plaintiffs' state tort claims for

---

[2]   The parties make no representations about nor discuss the "amount in controversy" and "parties' resources," two other express considerations set out in Rule 26, so these factors are deemed neutral and need not be addressed. *See* FED. R. CIV. P. 26(b)(1). In addition, given the current posture of the case, before discovery has formally commenced, consideration of whether the discovery sought is "unreasonably cumulative or duplicative" is inapplicable.

12

assault and battery, which are subject to a one-year limitations period due to expire on June 1, 2021, plaintiffs will be unable to name, and therefore to pursue these claims against, the Doe MPD officers.  *See* Def.'s Opp'n at 4, 5–6; *see* Pls.' Reply at 6.[3]

The District discounts the importance of the looming limitations period, pointing out that plaintiffs filed their case on March 28, 2021, "two months and two days prior to the expiration of the statute of limitations" for assault and battery claims, Def.'s Opp'n at 6, and five months after each plaintiff filed "a notice with the District's Office of Risk Management," *id.*; *see* Def.'s Opp'n, Ex. 1, Notices of Claims Against the Metropolitan Police Department as to Pamela Goodwin, Allison Lane, Jesse Pearlmutter, Sebastian Medina-Tayac and Samanta Troper (Oct. 28, 2020); Jenny Lazo's Notice of Claim Against the Metropolitan Police Department (Nov. 12, 2020); Osea Remick's Notice of Claim Against the Metropolitan Police Department (Nov. 12, 2020); Piryanka Surio's Notice of Claim Against the Metropolitan Police Department (Nov. 12, 2020), ECF No. 13-1.  Based on this chronology, the District accuses plaintiffs of seeking to "circumvent the typical rules of discovery and force the District to respond" to an "onerous discovery request[] within two weeks so that they do not miss a deadline over which they had complete control."  Def.'s Opp'n at 6.  The District's effort to avoid discovery on this matter critical to plaintiffs' claims by suggesting dilatory conduct on plaintiffs' part actually works in

---

[3]    Identifying the Doe MPD Officers to name as defendants in the assault and battery claims will also be helpful in identifying the proper defendants to name for the federal § 1983 claims, which are subject to a three-year statute of limitations.  *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 123 (2005) (noting that "42 U.S.C. § 1988 is 'a directive to select, in each State, the one more appropriate statute of limitations for *all* § 1983 claims.'" (quoting *Wilson v. Garcia*, 471 U.S. 261, 284(1985)) (emphasis in original); *Owens v. Okure*, 488 U.S. 235, 249–50 (1989) ("[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."); *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (applying three-year residual statute of limitations to a § 1983 claim against the District of Columbia for failure to comply with its obligations imposed by the Vienna Convention on Consular Relations); *Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) ("The Supreme Court has held that in states with multiple statutes of limitations, claims under section 1983 are governed by the residual or general personal injury statute of limitations (like [D.C. Code] section 12-301(8))").

the reverse direction: the District has been on notice, for almost six months, since October and November, 2020 that assault and battery claims might be brought against MPD officers for conduct arising from the manner in which MPD handled plaintiffs' peaceful protests on June 1, 2020, and given this passage of time, the District should be better prepared to respond to requests for information about which MPD officers on the scene did what. *See id.* Contrary to the District's effort to blame plaintiffs for being unable to identify the Doe MPD Officers, the record in this case shows that plaintiffs have sought to obtain the necessary information through more convenient, less burdensome, and less expensive channels and diligently pursued information to identify the names of the Doe MPD Officers, by notifying the District of the specific requests, on March 26, 2021, *see* Pls.' Letter at 1–2, and conferring with the District extensively by telephone, Pls.' Reply at 2–3, and email, *see generally* April 8, 2021 Email; April 15–21, 2021 Emails. These efforts have been to no avail.

The next factor to consider—"the parties' relative access to relevant information," FED. R. CIV. P. 26(b)(1)—plainly favors plaintiffs. The District, without question, possesses any relevant information about the Doe MPD Officers in the District's employ. The requested discovery simply cannot be reasonably obtained from some other source before expiration of the statute of limitations. Alternative means to obtain information identifying the Doe MPD Officers alleged to have injured the plaintiffs might involve production and review of all MPD body-worn camera ("BWC") footage from June 1, 2020 showing plaintiffs, combined with identification of any officer associated with that footage or being shown on the BWC footage engaging in allegedly harmful conduct. Such an alternative might produce fairly precise information about what occurred that day, but given the volume of such footage available, this means of producing the requested information might be burdensome if required to be produced on an expedited basis.

Notably, this is not what plaintiffs have requested in the pending motion, and the information they have requested, though possibly less precise, is also less burdensome to obtain and produce.

Finally, the Court must consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Here, the "likely benefit" of the proposed discovery largely outweighs its burden. The District does not dispute that the expedited discovery requested in this motion "is not burdensome to produce, as, upon information and belief, the Metropolitan Police Department keeps [information about officers who use force or have force-related complaints against them] in the regular course of business." Pls.' Mot. at 6. Moreover, plaintiffs' requests are sufficiently specific and narrow, "tailored to identify the officers who used the force alleged in Plaintiffs' Complaint" at a specific location on a specific date, *id.*, as evidenced by plaintiffs' proposed order, which reflects pragmatic willingness "to accept any information that would be sufficient to allow [plaintiffs] to identify John Doe officers," Pls.' Reply at 7; *see also* Pls.' Mot., Ex. 2, Proposed Order, ECF No. 11-2 (requesting "information sufficient to identify the John Doe officers who used force against Plaintiffs as alleged in their Complaint by May 17, 2021").

The District objects that "providing [the] information on an expedited basis would be burdensome to the District," Def.'s Opp'n at 5, but this objection relies solely on the District's concern about being "required to review extensive footage . . . on a truncated timeline" when there were "approximately 200 MPD officers present at Swann Street NW on June 1, 2020, all of whom were equipped with body-worn cameras (BWC)." Def.'s Opp'n at 6. This concern is misplaced because plaintiffs' pending motion for expedited discovery does not request BWC footage. Indeed, plaintiffs were not even aware that this volume of BWC footage existed until the District filed its opposition. Pls.' Reply at 4. Instead, plaintiffs have "crafted their proposed

order . . . specifically to allow Defendant to provide" information about the Doe MPD Officers that used force "in the least burdensome manner possible," Pls.' Reply at 4, and have repeatedly suggested that the identities of the Doe MPD Officers may be reasonably ascertained through "reports and complaints regarding individual officers' use of force at the time and place in question," *id.* at 6; *see also id.* at 10.[4]  While plaintiffs have agreed to receive and review "video footage" in the District's possession that would assist them in identifying Doe MPD Officers to be charged in the complaint, Pls.' Mot. at 3, they only made such a suggestion in response to the District's refusal to provide the records plaintiffs originally sought, *see* April 15–21, 2021 Emails at 2.

Additionally, the District alleges plaintiffs' requests are burdensome for "lack [of] clarity." Def.'s Opp'n at 5.  This objection falls short given both the record of the parties' conferral process submitted to the Court, the briefing in connection with the pending motion, and the detailed allegations in the Complaint, which alleges that the Doe MPD Officers "us[ed] their batons to push and batter protesters[,]" "deploy[ed] excessive amounts of pepper spray at [plaintiffs,]" "used violent physical force[,]" and "hit demonstrators, prodded and shoved them with batons, knocked them to the ground, and pinned them against cars and trees."  Compl. ¶¶ 43–45, 51–52; *see also, e.g.*, April 20, 2021 Emails at 2 (plaintiffs requesting guidance from the District on what kind of information on use of force would be "more narrow" and offering,

---

[4]     The District's argument about the burden of being required to review "potentially hundreds of hours of footage" on an expedited basis, Def.'s Opp'n at 5–6, is thus baseless.  To the degree, however, that the District's argument also reflects a concern about being required to review all relevant records in its possession on an expedited basis to fulfill the plaintiffs' request, the District may rest assured that plaintiffs' requests for information "sufficient to identify" the Doe MPD Officers does not require disclosure of *all* relevant information at this stage, but only enough information to assist plaintiffs in identifying these individuals. *Cf. U.S. Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 61 F. Supp. 3d 1, 8 (D.D.C. 2014) (rebuking party's objection to request for production, because the party "[did] not know what documents 'sufficient to identify'" meant, as "baseless" and "deliberate obfuscation").

without knowledge of the District's available records, to narrow the plaintiffs' requests to "information regarding who used force or deployed pepper spray on Swann Street at the time in question, video footage that identifies specific officers and their actions, and/or use of force reports that identify specific officers and the force used").

The District may not avoid producing information both relevant and critical to plaintiffs' claims before the expiration of the statute of limitations by denying plaintiffs' informal requests for discovery to identify the Doe MPD Officers and delaying response to plaintiffs' repeated attempts to clarify or narrow the requests to reduce the District's burden in expedited production.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to conduct expedited discovery is granted and defendant District of Columbia is directed to produce, by May 25, 2021, (1) use of force reports filed by MPD officers for actions taken on the 1400 block of Swann Street NW on June 1, 2020 and (2) complaints filed against MPD officers for excessive force taken on the 1400 block of Swann Street NW on June 1, 2020.  An order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:  May 18, 2021

_____
BERYL A. HOWELL
Chief Judge