UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAMELA GOODWIN, *et al.*, <br><br> *Plaintiff*, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> *Defendants*. | Case No. 1:21-cv-00806 (BAH) |

## DEFENDANTS THE DISTRICT OF COLUMBIA AND PETER NEWSHAM'S MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

Defendants the District of Columbia and Metropolitan Police Department Chief Peter Newsham (collectively Defendants) respectfully move this Court, under Fed. R. Civ. P. 12(b)(6), to dismiss Counts I, II and IV of Plaintiffs' Complaint., Plaintiffs fail to state any claims of municipal liability under 42 U.S.C. § 1983, Chief Newsham is entitled to qualified immunity on the § 1983 claims, and the First Amendment Assemblies Act cannot support a claim of negligence *per se*. In support of this Motion, the Defendants have attached a memorandum of points and authorities and a proposed order.

Date: May 19, 2021

Respectfully Submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ *Stephanie E. Litos*
STEPHANIE E. LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

/s/ *Matthew Trout*
MATTHEW TROUT [1030119]
PHILIP A. MEDLEY [1010307]
Assistant Attorneys General
400 6th Street, N.W.
Washington, D.C. 20001
(202) 724-5695
(202) 724-6590 (fax)
matthew.trout1@dc.gov
philip.medley@dc.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAMELA GOODWIN, *et al.*,

   *Plaintiff*,

   v.

DISTRICT OF COLUMBIA, *et al.*,

   *Defendants*.

Case No. 1:21-cv-00806 (BAH)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS THE DISTRICT OF COLUMBIA AND PETER NEWSHAM'S MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

Defendants the District of Columbia (the District) and former Metropolitan Police Department (MPD) Chief Peter Newhsam submit this memorandum of points and authorities in support of their motion to dismiss Counts I, II, and IV of the Complaint. First, Plaintiffs fail to allege facts to support a claim of municipal liability under 42 U.S.C. § 1983 for their Fourth and First Amendment claims, and thus the District is entitled to dismissal of Counts I and II. Chief Newsham is entitled to qualified immunity on those same claims. Additionally, to the extent Count II is based on a purported retaliatory arrest, it fails as a matter of law. Finally, the First Amendment Assemblies Act is not a proper basis for Plaintiffs' negligence *per se* claim, and accordingly all defendants are entitled to dismissal of Count IV of the Complaint.

## FACTS

Plaintiffs claim that on the evening of June 1, 2020, they were attending protests in the District of Columbia when they were "kettled" by the Metropolitan Police Department (MPD) in the 1400 block of Swann Street NW and subjected to excessive force. *See* Compl. [1] ¶¶ 35-60. Plaintiffs concede they were in violation of a District-wide curfew. *Id.* ¶¶ 5–6. Plaintiffs each

allege that they were assaulted with pepper spray and otherwise had their movement restricted. *Id.* ¶¶ 3–5. Half of the eight Plaintiffs were formally arrested and charged with curfew violations, while the remaining Plaintiffs "took shelter in homes on Swann Street." *Id.* [1] ¶¶ 5, 50. Throughout the evening of June 1, Plaintiffs allege MPD Chief Newsham "directed and authorized the Officers' use of flash grenades, pepper spray, and other force, and was responsible for coordinating the Officers' response on the scene as he monitored the events." *Id.* [1] ¶ 33.

Plaintiffs assert four counts against the Defendants, including constitutional torts under 42 U.S.C. § 1983 for violations of the Fourth Amendment (excessive force) and violations of the First Amendment (retaliation for exercising rights to free speech and assembly); common law claims of assault and battery; and negligence per se (violations of the First Amendment Assemblies Act). *Id.* [1] at 20–25.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The Supreme Court has set forth a "two-pronged approach" that a trial court should use when ruling on a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, the basic pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009).

# ARGUMENT

I. **Plaintiffs Do Not Allege Facts to Support a Claim of Municipal Liability Under 42 U.S.C. § 1983 (Counts I and II).**

Plaintiffs bring two claims against the District under 42 U.S.C. § 1983, for violations of the Fourth and First Amendments, respectively, but Plaintiffs fail to plausibly allege the District's municipal liability. Section 1983 does not allow *respondeat superior* liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To establish municipal liability, a § 1983 plaintiff must identify a municipal policy, custom, or practice that caused the plaintiff's alleged constitutional injury. *See Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *see also Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010). As the Supreme Court explained in *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694.

Therefore, to hold the District liable for constitutional violations, a plaintiff must allege facts showing (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "[t]he action of a policy maker with the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *see also Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014). Plaintiffs assert the District is liable under the second and

fourth of these theories, based on the actions of then-Police Chief Newsham as a policy maker of the District of Columbia and the purported failure to properly train MPD Officers. Compl. ¶¶ 97, 103. Neither theory is viable on these facts; each is discussed in turn below.

### A. Plaintiffs' Allegations of Chief Newsham's High-Level Involvement Do Not Support a Claim of Municipal Liability.

Plaintiffs' first theory of municipal liability is based on the actions of Chief Newsham as a policy maker. Compl. ¶¶ 97, 103.[1] But Plaintiffs allege no facts demonstrating more than high-level involvement, and critically, Plaintiffs fail to allege that specific actions of Chief Newsham as policy maker—rather than the individual decisions and actions of the MPD Officers—were the cause of any injury to Plaintiffs.

Plaintiffs allege at least 50 MPD Officers were on the scene at Swann Street.[2] *Id.* ¶ 20. Plaintiffs do not allege that Chief Newsham was present at the scene of Swann Street. Similarly, Plaintiffs do not allege that Chief Newsham was specifically ordering and approving each action that dozens of officers were taking every moment. On the contrary, Plaintiffs allege that various officers were making different decisions about what force to use, and not all Plaintiffs were subject to the same level of force. *See, e.g.*, *id.* ¶ 31 (alleging flash grenades "scared Plaintiffs Lane, Lazo, Medina-Tayac, Pearlmutter, and Remick [but not Goodwin, Surio or Troper]"); *id.* ¶ 53 (alleging "Plaintiff Medina-Tayac was pinned against the hood of a car, fell to the ground, and was stepped on."); *id.* ¶ 55 (alleging an officer "struck [Surio] in the chest and abdomen with a baton."). These factual allegations belie the assertion that any

---

[1] To the extent the Complaint alleges municipal liability based on other MPD officials' actions, officials below the Chief of Police are not policy makers, and their actions cannot give rise to municipal liability. *Miner v. District of Columbia*, 87 F. Supp. 3d 260, 267 (D.D.C. 2015) (holding that an Assistant Chief is not a policy maker).

[2] As the District noted in its opposition to Plaintiffs' motion for expedited discovery, the number of officers on the scene was closer to 200. *See* Def.'s Opp. [13] at 5.

4

particular use of force was directly attributable to Chief Newsham rather than an individual officer exercising his or her discretion as to how to respond at any particular moment. And as the Supreme Court has cautioned, "if the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). Because Plaintiffs fail to allege any particular action by Chief Newsham, as opposed to the uses of force by individual officers, that caused their injuries, Chief Newsham's actions cannot support a claim of municipal liability on Plaintiffs' excessive force claim. *See id.*

Similarly, Plaintiffs fail to allege any facts that Chief Newsham made a conscious policy choice to avoid arresting other individuals for curfew violations and arrest only those engaged in protected speech. Thus, even if Plaintiffs had alleged a valid First Amendment claim, they would still fail to plead the District's liability based on Chief Newsham's actions. The District is thus entitled to dismissal of Counts I and II to the extent they are based on a theory of policy-maker liability.

### B. Plaintiffs Do Not Allege Any Facts Whatsoever to Support A Claim of Municipal Liability Based on Failure to Supervise or Train MPD Officers.

In support of their second theory of municipal liability, Plaintiffs summarily allege that the District "failed to train and supervise" MPD Officers regarding proper use of force.[3] Compl. ¶¶ 18, 97, 103. With no other factual allegations, this theory amounts to "an unadorned, the-defendant-unlawfully-harmed-me accusation," which will not suffice to state a viable claim. *Iqbal*, 556 U.S. at 678. Plaintiffs allege no facts at all regarding the training and supervision of the MPD Officers here, and that alone is fatal to their claim. *See id.*

---

[3] Accordingly, Plaintiffs do not allege in the Complaint that this theory of municipal liability applies to their First Amendment claim.

Although Plaintiffs' failure to allege any facts regarding training and supervision is sufficient to warrant dismissal, Plaintiffs also fail to specifically allege facts that any training or supervision failures were the result of deliberate indifference, which is necessary to establish municipal liability under § 1983. A failure to train gives rise to municipal liability "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Dorman v. District of Columbia*, 888 F.2d 159, 165 (D.C. Cir. 1989) (holding that § 1983 claim could not survive on the basis of a failure to train where "there [was] no evidence of a *conscious choice or a policy* of deliberate indifference") (emphasis in original). To meet this standard, a plaintiff can show that "the frequency of constitutional violations makes the need for further training . . . plainly obvious to the city policymakers." *Atchinson v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996) (internal quotation marks omitted).

Here, the Complaint is devoid of any facts supporting a claim of deliberate indifference. Because Plaintiffs do not allege any facts at all regarding training and supervision, much less that any training deficiencies were the result of a conscious choice or policy, Plaintiffs fail to plead a viable municipal liability claim under § 1983. *Id.*; *see also Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004) ("We hold that absent an allegation that the MPD supervisors had actual or constructive knowledge of past transgressions or that the supervisors were responsible for or aware of 'clearly deficient' training, the supervisors did not violate any constitutional right through inaction or failure to supervise.).

Accordingly, the Court should dismiss Count I of the Complaint to the extent it is predicated on the District's failure to supervise and train MPD Officers.

## II. Chief Newsham Is Entitled to Qualified Immunity.

Chief Newsham is entitled to qualified immunity. "To survive a motion to dismiss [on qualified immunity grounds], [the plaintiff] must . . . allege facts sufficient to show that [the defendant] violated a clearly established constitutional right, or that [he was] on notice of the illegality of [his] actions." *Turpin v. Ray*, 319 F. Supp. 3d 191, 200 (D.D.C. 2018). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations and quotation marks omitted). In determining whether the legal rights at issue are clearly established, a court must look to "cases of controlling authority in [its] jurisdiction." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). If there is no such controlling authority, then a court must determine whether there is "a consensus of cases of persuasive authority." *Id.* The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Plaintiffs identify no authority establishing that the Chief Newsham's actions violated the Fourth or First Amendments. Under §1983, "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Plaintiffs do not identify any action by Chief Newsham, as opposed to other MPD officials, that violated any constitutional right. Indeed, Plaintiffs' allegations against Chief Newsham do not extend beyond generalities. *See, e.g.*, Compl. ¶ 19 ("Upon information and belief, Defendant Newsham ordered, directed, authorized, supervised, and caused the violations alleged herein.").

7

Plaintiffs allege that Chief Newsham made the decision to deploy officers, that he "monitored and directed the Officers' response to protesters on June 1," and that he "acknowledged responsibility for stopping the demonstrators on Swann Street." *Id.* ¶ 59. Plaintiffs also allege "Defendant Newsham directed and authorized the Officers' use of flash grenades, pepper spray, and other force, and was responsible for coordinating the Officers' response on the scene as he monitored the events," but those actions are not by themselves a constitutional violation. *See Id.* ¶ 33. Plaintiffs do not identify any particular action that Newsham took that violated a clearly established constitutional right, which is fatal to their claims against him. *Turpin*, 319 F. Supp. 3d at 200; *see also Reichle v. Howards*, 566 U.S. 658, 663 (2012) (granting qualified immunity in the context of a First Amendment retaliatory arrest claim)

Because Plaintiff cannot show existing law "placed the constitutionality of [Chief Newsham's] conduct beyond debate," *Wesby*, 138 S. Ct. at 589, Chief Newsham is entitled to qualified immunity on Counts I and II. Accordingly, the Court should dismiss these counts against him.

### III. Plaintiffs Have Not Alleged a First Amendment Retaliatory Arrest (Count II).

Because Plaintiffs have not alleged municipal liability, and Chief Newsham is entitled to qualified immunity, the Court need not reach the issue of whether the facts alleged will support a First Amendment retaliation claim. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To the extent, however, Plaintiffs assert a First Amendment retaliatory *arrest* claim, it fails as a matter of law.

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). In the context of a retaliatory arrest claim, "[t]he plaintiff

pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). In other words, "absent such a showing [of the lack of probable cause], a retaliatory arrest claim fails." *Id.* at 1725. An arrest is reviewed under an objective standard, and "[a] particular officer's state of mind is simply 'irrelevant.'" *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004)).

Here, Plaintiffs concede they were in violation of a curfew. Compl. ¶ 5-6. That establishes probable cause for their arrest and is sufficient to defeat any First Amendment retaliatory arrest claim. *Nieves*, 139 S. Ct. at 1724. Thus, to the extent their retaliation claim relies on their arrest,[4] the Court should dismiss Count II of the Complaint.

## IV. The First Amendment Assemblies Act Does Not Establish a Standard for a Claim of Negligence *Per Se* (Count IV).

The First Amendment Assemblies Act (FAAA) does not impose specific duties beyond the common law duty of reasonable care, and therefore it cannot support Plaintiff's claim of negligence *per se*. "'To establish negligence' under D.C. law, 'a plaintiff must prove a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'" *Sigmund v. Starwood Urban Retail VI, LLC*, 617 F.3d 512, 514 (D.C. Cir. 2010) (quoting *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 642 n.3 (D.C. 2005) (en banc)). "Violation of a statute or regulation may constitute negligence *per se* only if the statute is meant to promote safety, if the plaintiff is a member of the class to be protected by the statute, and if the defendant is a person upon whom the statute imposes specific duties." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039–40 (D.C. 2014) (citations and internal quotation marks omitted); *see also Jarrett v.*

---

[4] To be sure, only four of the eight Plaintiffs were actually arrested; the other four evaded arrest by sheltering in a house on Swann Street. Compl. ¶ 50. Nothing in *Nieves* suggests its logic would not apply equally to *attempted* arrests, however.

9

*Woodward Bros.*, 751 A.2d 972, 977 (D.C. 2000) (discussing whether statute could provide "the requisite duty and standard of care").

Importantly, "a statute or regulation offered to establish a standard for negligence *per se* purposes must not merely repeat the common law duty of reasonable care, but must set forth 'specific guidelines to govern behavior.'" *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. Cir. 1996) (quoting *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 558 (D.C. Cir. 1993)). Rather, a statute will support a claim for negligence *per se* "only" if it "imposes specific duties." *Night & Day Mgmt.*, 101 A.3d at 1039–40; *see also McNeil Pharm.*, 686 A.2d at 579. Thus, if a statute provides actors with discretion or essentially restates the common law standard of reasonable care, it cannot form the basis of a claim for negligence *per se*. *See Night & Day Mgmt.*, 101 A.3d at 1040 (finding that statutes using terms "sufficient" and "adequate" grant "considerable discretion and do not specifically outline any standards" to support negligence *per se*); *see also Gadaire v. Orchin*, 197 F. Supp. 3d 5, 15 (D.D.C. 2016); *Chadbourne v. Kappaz*, 779 A.2d 293, 296–97 (D.C. 2001) (finding that a negligence *per se* instruction was not warranted where the statute did not "contain the kind of specific guidelines that would allow one to determine whether the statute has been violated without resorting to a common law reasonable care analysis.").

The provisions of the FAAA relied on by Plaintiffs cannot support a negligence *per se* claim because they turn on the exercise of discretion and merely restate a general reasonableness standard. For example, the first provision Plaintiffs rely on states that:

> If and when *the MPD determines* that a First Amendment assembly, or part thereof, should be dispersed, the MPD shall issue at least one clearly audible and understandable order to disperse using an amplification system or device, and shall provide the participants a *reasonable and adequate time* to disperse and a clear and safe route for dispersal.

10

Compl. ¶ 113; D.C. Code § 5-331.07(e)(1) (emphasis added). As an initial matter, Plaintiffs have not alleged that MPD made a determination to disperse any First Amendment assembly, so D.C. Code § 5-331.07(e)(1) simply does not apply.[5] But even if this section did apply, it merely restates a general reasonableness standard. As at least one other court in this jurisdiction acknowledged, D.C. Code § 5-331.07(e)(1) "doesn't set forth the specific guidelines that would enable a fact finder to decide whether the statute has been violated without resorting to a reasonable care analysis." Ex. 1, Tr. of Oral Decision at 33, *Horse v. District of Columbia*, No. 1:17-cv-01216 (D.D.C. Sept. 27, 2019). Therefore, it cannot support a claim of negligence *per se*.

Similarly, Plaintiffs allege that the use of chemical irritants was not "*reasonable or necessary* to protect officers or others from physical harm." Compl. ¶ 115 (citing D.C. Code § 5-331.16(b)(2)) (emphasis added). The statute's use of the term "reasonable and necessary" makes it impossible "to tell whether the officers violated this standard without evaluating their actions against a common law baseline of reasonable behavior." Ex. 1, Tr. of Oral Decision at 34, *Horse v. District of Columbia*, No. 1:17-cv-01216 (D.D.C. Sept. 27, 2019) (citing *Sibert-Dean v. Wash. Metro. Area Transit Auth.*, 721 F.3d 699, 703 (D.C. Cir. 2013)). This provision, too, cannot support a negligence *per se* claim.

Those Plaintiffs who were arrested also point to provisions of the FAAA that relate to the conditions of their confinement. Compl. ¶ 116; D.C. Code §§ 5-331.11, 5-331.12. But these

---

[5] D.C. Code § 5-331.07 does not require dispersal orders be given in lieu of, or before, arrest. Rather, it permits MPD to respond to unlawful conduct by "dispersing, controlling, or arresting the persons engaged in such conduct." D.C. Code § 5-331.07(c). Moreover, dispersal would be inconsistent with a decision to arrest in accordance with D.C. Code § 5-331.08. Plaintiffs' negligence *per se* claim based on D.C. Code § 5-331.07(e)(2) fails for the same reason.

provisions likewise merely restate the common law duty of care, and are full of references to "reasonableness" and similar language that makes it impossible to determine if the statute has been violated without resorting to the common law standard of reasonable care. *See* D.C. Code § 5-331.12(a)(1) ("MPD shall *promptly* process" and "*promptly* release" arrestees) (emphasis added); § 5-331.12(b)(2) ("MPD shall provide to any person not released within a *reasonable time* of arrest food appropriate to" their health) (emphasis added); § 5-331.11(b) (limiting the use of restraints "only to the extent *reasonably necessary*, and in a manner *reasonably necessary*, for the safety of officers and arrestees") (emphasis added). This type of language simply does not amount to specific guidance upon which to base a claim of negligence *per se*. *See, e.g.*, *Thoma v. Kettler Bros.*, 632 A.2d 725, 727 & 728 n.8 (D.C. 1993) (noting that regulation requiring slippery conditions to be "eliminated as soon as possible" did not differ significantly from common law standard of reasonable care and thus did not support negligence *per se*). Thus, "[t]hese statutes give the MPD considerable discretion and it would be difficult to evaluate a negligence claim using these as standards of care without resorting to the general standard of reasonableness required." Ex. 1, Tr. of Oral Decision at 85, *Horse v. District of Columbia*, No. 1:17-cv-01216 (D.D.C. Sept. 27, 2019).

Despite Plaintiffs' conclusory claim that these provisions constitute "a legally defined duty of care to Plaintiffs," Compl. ¶ 119, none of the provisions of the FAAA cited impose a specific duty beyond the common law reasonableness standard. Therefore, the Court should dismiss Count IV of Plaintiffs' Complaint.

## CONCLUSION

For these reasons, the District and Chief Newsham request that the Court grant the motion and dismiss Counts I, II, and IV of the Complaint.

Date: May 19, 2021                    Respectfully Submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ *Stephanie E. Litos*
STEPHANIE E. LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

/s/ *Matthew Trout*
MATTHEW TROUT [1030119]
PHILIP A. MEDLEY [1010307]
Assistant Attorneys General
400 6th Street, N.W.
Washington, D.C. 20001
(202) 724-5695
(202) 724-6590 (fax)
matthew.trout1@dc.gov
philip.medley@dc.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAMELA GOODWIN, *et al.*,

    *Plaintiff*,

    v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants*.

Case No. 1:21-cv-00806 (BAH)

**ORDER**

Upon consideration of the District of Columbia and Peter Newsham's Motion for Partial Dismissal of the Complaint and the entire record herein, it is this _____ day of _____ 2021 hereby,

**ORDERED** that the Motion is **GRANTED**; and it is further

**ORDERED** that Counts I, II, and IV of the Complaint are **DISMISSED WITH PREJUDICE** as to Defendants the District of Columbia and Peter Newsham.

**SO ORDERED.**

---

HON. BERYL A. HOWELL
United States District Court for the District of Columbia