# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAMELA GOODWIN, *et al.*, <br><br> *Plaintiff*, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> *Defendants*. | Case No. 1:21-cv-00806 (BAH) |

## REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE FIRST AMENDED COMPLAINT

Defendants the District of Columbia (the District), former Metropolitan Police Department (MPD) Chief Peter Newsham, Inspector Robert Glover, Lieutenant Andrew Horos, Lieutenant Carlos Mejia, Officer James Crisman, and Officer Steven Quarles (collectively, Defendants) submit this reply to Plaintiffs' Opposition [28] to the Defendants' Motion for Partial Dismissal of the First Amended Complaint [24]. Plaintiffs' four principal arguments against dismissal are unavailing. *First*, Plaintiffs fail to allege facts to support a claim of municipal liability under 42 U.S.C. § 1983 for their Fourth and First Amendment claims, and thus the District is entitled to dismissal of Counts I and II. *Second*, Chief Newsham is entitled to qualified immunity on those same claims. *Third*, to the extent Count II is based on Plaintiffs' conditions of confinement following arrest, it fails as a matter of law. *Finally*, the First Amendment Assemblies Act does not provide specific standards to support a negligence per se claim, and accordingly all Defendants are entitled to dismissal of Count IV of the Complaint.

# ARGUMENT

I. **Plaintiffs Do Not Allege Facts to Support a Claim of Municipal Liability Under 42 U.S.C. § 1983 (Counts I and II).**

In response to the District's argument that their First Amended Complaint fails to state a claim for § 1983 municipal liability, Plaintiffs' strategy is clear: throw every theory against the wall and hope that something sticks. But despite their efforts, Plaintiffs' municipal liability claims are doomed by the lack of specific factual allegations supporting any of those theories.

*First*, Plaintiffs argue that they have stated a claim for municipal liability under the "final policymaker" theory by generically alleging that Chief Newsham "directed and authorized" the allegedly unconstitutional actions by the officers on Swann Street that evening. *See* Pls.' Opp'n [28] at 11–14. Plaintiffs rely on several non-binding cases in support, and yet even those cases belie their argument. For example, they cite *Alsaada v. City of Columbus*—a case from the Southern District of Ohio—for the proposition that municipal liability can lie based on an allegation that a police chief "provided the marching orders" for unconstitutional conduct. *Id.* at 12. But Plaintiffs fail to mention that the plaintiffs in *Alsaada* alleged that the chief of police gave specific marching orders that led to the plaintiffs' constitutional injuries—namely, that he "armed [the police] with military-grade equipment and [gave them] a green light to spray pepper spray, deploy tear gas, and fire wooden pellets to inflict pain as a deterrent[.]" *Alsaada v. City of Columbus,* No. 2:20-cv-3431, 2021 WL 1725554, at *43 (S.D. Ohio April 30, 2021). Similarly, Plaintiffs cite *Scott v. Louisville/Jefferson County Metro Gov't*—a Western District of Kentucky case—for finding that municipal liability attached when final policymakers "ratified" the unconstitutional conduct because they "knew that . . . officers used certain crowd control methods against protesters who were not exhibiting a threat to officers or to the public[.]" Pls.'

Opp'n [28] at 12. But again, Plaintiffs ignore that the plaintiffs in *Scott* alleged specific detailed conduct by the policymakers in question:

> [W]hen asked about [the officers'] conduct during the protests, [the Mayor of Louisville] conceded that the protesters were nonviolent, but he nonetheless defended the use of tear gas and batons. Likewise, Plaintiffs state that [the police department's] Standard Operating Procedures require approval from a commanding officer—such as [the chief and assistant chief of police]—prior to using any chemical agents, including pepper balls. This allegation, Plaintiffs claim, make[s] it plausible that one or both have actually authorized the use of crowd control weapons that have injured Plaintiffs. Furthermore, Plaintiffs repeatedly allege that Defendants failed to investigate or discipline officers for the use of chemical agents or excessive force against nonviolent protesters, even in the face of media scrutiny, lawsuits, and complaints to [the police department]. Thus, Plaintiffs allege that the Defendant City Officials either affirmatively approved of the complained of [the police department's] conduct or neglected their duty to know and act upon unconstitutional conduct.

*Scott v. Louisville/Jefferson County Metro Gov't*, 503 F.Supp.3d 532, 538 (W.D. Ky. 2020) (quotation marks and citations omitted). Here, Plaintiffs do not allege analogous conduct by Chief Newsham. Plaintiffs further cite to *Hardeman v. Clark,* but that case is irrelevant because it concerns a claim sustained against the chief of police under a theory of deliberate indifference, not a claim sustained against the municipality based on the single decision of a final policymaker. *See* 593 F.Supp. 1285, 1288 (D.D.C. 1984).

Plaintiffs argue that *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), supports of the notion that Chief Newsham did not need to be physically present at Swann Street to ratify the allegedly unconstitutional behavior of the officers on the scene. Pls.' Opp'n [28] at 13. But *Pembaur* shines a spotlight on how Plaintiffs' pleading is deficient. That case concerned deputy sheriffs who allegedly violated the plaintiff's Fourth Amendment rights when they used an axe to

chop down the door to his clinic in an effort to try to serve capiases[1] on two of his employees. *Pembaur*, 475 U.S. 469, 472–73 (1986). Before chopping down the door, the deputy sheriffs called the county prosecutor—a final policymaker—who specifically told the deputy sheriffs to "go in and get" the employees. *Id*. at 469. Here, Plaintiffs allege no such commands from Chief Newsham to the officers on Swann Street, instead describing his involvement in the events of that evening in the most nondescript and sweeping way possible. First Am. Compl [18] ¶¶ 19–25, 32, 34, 40, 46, 51, 66, 69, 73.[2] If Plaintiffs' generic allegations that Chief Newsham "directed and authorized" the allegedly unconstitutional conduct of the officers were sufficient to establish municipal liability, it is difficult—if not impossible—to imagine a scenario where any plaintiff would fail to state a claim for municipal liability, as one could satisfy the pleading standard by simply including a single allegation, without supporting facts, that a high ranking government official directed and authorized the conduct at issue.

*Second*, Plaintiffs fare no better when they argue that they have stated a claim for municipal liability under a failure-to-train theory. Plaintiffs argue that the law "imposes no requirement that a plaintiff have information about, and thus plead, facts concerning the full contours of a defendant's training program to survive a motion to dismiss." Pls.' Opp'n [28] at 15. This is a straw-man argument and—more importantly—not what Defendants argued in their motion. Instead, Defendants pointed out that the First Amended Complaint contains no factual

---

[1] A capias is a writ of attachment commanding the presence in court of an individual who failed to appear in court after being served with a subpoena. *Pembaur*, 475 U.S. 469, 472 n.1 (1986).
[2] Moreover, many of Plaintiffs' vague allegations are pleaded "on information and belief." *See, e.g.*, First. Am. Compl [18] ¶¶ 19, 34, 40, 69, 73. Where such allegations are appropriate, the D.C. Circuit has "require[d] that the allegations based on information and belief be accompanied by a statement of the facts upon which the allegations are based." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (internal quotation and citation omitted). Plaintiffs have not provided such a statement of facts.

4

allegations whatsoever concerning failures of training, nor does it include any allegations that could support a claim of deliberate indifference. Defs.' Mem. of P. and A. [24] at 9. And the cases cited by Plaintiffs support Defendants' argument. Plaintiffs cite *Simms v. City of New York* for the proposition that they can plead a § 1983 failure-to-train claim "by alleging facts indicating [a] pattern of similar constitutional violations by untrained [municipal] employees." Pls.' Opp'n [28] at 15 (quoting *Simms*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012)). Unfortunately for Plaintiffs, the First Amended Complaint includes no such factual allegations. Plaintiffs claim that MPD's allegedly unconstitutional practices have occurred "repeatedly" over the years, but in support, they cite four instances over the span almost two decades: one in 2000, two in 2005, and one in 2017[3]. *See* Pls.' Opp'n [28] at 16; *and see* First Am. Compl. [18] ¶ 68. Plaintiffs generically discuss the existence of "lawsuits" associated with these disparate incidents, and they point out that the Court can take judicial notice of the lawsuits. *See* Pls.' Opp'n [28] at 17. But Plaintiffs fail to identify—in either the First Amended Complaint or their opposition—the lawsuits they are referring to, apparently expecting the Court to track down the lawsuits in question before taking judicial notice of them.

Plaintiffs cite numerous cases in which § 1983 municipal liability claims survived dismissal, but a closer look at the cases reveals that those claims survived because the claimants—unlike Plaintiffs—asserted sufficient factual material. *See e.g. Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 38 (D.D.C. 2010) (plaintiff alleged six separate instances of unlawful conduct in six different locations involving numerous officers that occurred within two

---

[3] Notably, Plaintiffs do not allege that any of these four incidents involved allegations of retaliatory arrests. Therefore, even if the Court found that these incidents could support a theory of deliberate indifference as to Plaintiffs' excessive force claim, the Court should still dismiss Plaintiff's retaliatory arrest claim.

5

years); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (plaintiff presented evidence that (1) as many as 60 incidents of the police breaking down doors without a warrant occurred over the course of a 24-year period, (2) the municipality provided a 12-pound sledgehammer for use in breaking down doors, and (3) the alleged unconstitutional event was consistent with a department-wide practice.); *Osterhoudt v. City of New York*, No. 10 CV 3173, 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) (plaintiff cited to lawsuits associated with three events apparently occurring within seven years prior to the plaintiff's arrest); *In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 20-cv-8924 (CM) (GWGG), 2021 WL 2894764, at *8–9 (S.D.N.Y. July 9, 2021) (plaintiffs cited "NGO reports that document accounts of police misconduct at anti-war protests in the early 2000s and during the 2011 Occupy Wall Street demonstrations, targeted at protesters, bystanders, lawyers, legal observers, and journalists alike; numerous lawsuits alleging incidences of police brutality against protesters, bystanders, legal observers, and journalists (most of which were settled and some of which are ongoing); thousands of Civilian Complaint Review Board ("CCRB") complaints regarding the NYPD's response to the protests that took place between May 28 and June 20, 2020 alone, as well as hundreds more dating back to 2003; the NYPD's decision to deploy officers who were the subjects of such lawsuits and CCRB complaints to the BLM protests as part of the NYPD's Strategic Response Group; NYAG, Human Rights Watch, Corporation Counsel and Department of Investigation investigations and reports documenting the police response to the BLM protests and protests past; and, of course, the individual incidents alleged in the complaints." (citations omitted)).

*Finally*, Plaintiffs argue that the First Amended Complaint states a claim for municipal liability under the "policies and practices" theory, and they argue that Defendants in their motion

"completely ignore" that theory. Pls.' Opp'n [28] at 10. But Defendants only "ignored" it because the First Amended Complaint does not plausibly state a facially valid claim. Plaintiffs claim that they have sufficiently alleged that the alleged constitutional violations were the result of "the District's formal, written policies." *Id.* [28] at 18. But the First Amended Complaint only alleges that the District has "specific, standard operating procedures for handling First Amendment assemblies and other large scale demonstrations" and that "Defendants' actions on June 1 were pursuant to the District's policies." Again, Plaintiffs have failed to make a *specific* factual allegation. Plaintiffs make no mention in their First Amended Complaint of a particular written policy that caused the alleged unconstitutional violations, First Am. Compl. [18], *passim*, although MPD's standard operating procedure for First Amendment activities is available to the public online. *See Written Directives: Standard Operating Procedures*, Metropolitan Police Department, *available at* https://mpdc.dc.gov/node/423112.

In arguing that the First Amended Complaint adequately alleges a pattern or practice of constitutional violations, Plaintiffs cite many of the same cases they rely on in the "failure-to-train" section of their argument. *See* Pl.'s Opp. [28] 19–20. These cases are inapposite for the same reasons discussed above—namely, that the claimants in those cases alleged the type of factual material that Plaintiffs' First Amended Complaint lacks. *See e.g. In re N.Y.C. Policing During Summer 2020 Demonstrations*, 2021 WL 2894764, at *9 (noting that "[p]laintiffs identif[ied] *a number of police practices* . . . and *pleaded facts* from which it could be inferred that this was not some 'one off' instance of misuse of these practices" (emphasis added)).

Because Plaintiffs fail to show that the First Amended Complaint includes sufficient factual material to support a claim for § 1983 municipal liability, the Court should grant Defendants' motion as to those claims.

## II. Chief Newsham Is Entitled to Qualified Immunity Because Plaintiffs Have Not Alleged Facts to Show He Violated Clearly Established Law.

Chief Newsham is entitled to qualified immunity. Arguing to the contrary, Plaintiffs assert the Chief Newsham is liable as a supervisor even if he did not directly participate in any of the alleged misconduct and that his actions violated clearly established law. Neither argument is persuasive, and accordingly, the Court should dismiss Counts I and II against Chief Newsham.

Plaintiffs first argue that Chief Newsham is personally liable under § 1983 for the same reasons, discussed above, that Plaintiffs argue the District is liable due to Chief Newsham's role as a policymaker. *See* Pls.' Opp'n [28] at 18–19. Thus, for the same reasons discussed *supra*, Section I, Plaintiffs have failed to provide sufficient factual support that Chief Newsham is liable for any involvement in the events at Swann Street.

Plaintiffs next argue Chief Newsham's actions violated their clearly established Fourth and First Amendment rights, but Plaintiffs offer no facts to show that Chief Newsham had any role in violating those particular rights. Plaintiffs cite several cases establishing that unprovoked use of force violates the Fourth Amendment. *See* Pls.' Opp'n [28] at 19 (citing *Rudder v. Williams*, 666 F.3d 790, 795 (D.C. Cir. 2012); *Norris v. District of Columbia*, 737 F.2d 1148, 1152 (D.C. Cir. 1984); *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1129 (9th Cir. 2002)). But Plaintiffs do not identify any particular use of force that Chief Newsham ordered. Even assuming Chief Newsham ordered and authorized the use of force generally, Plaintiffs allege that individual officers made different determinations about when such force was appropriate under the circumstances. *See, e.g.*, First Am. Compl. [18] ¶ 4 ("Defendant Quarles struck Plaintiff Surio with a police shield, and, separately, another John Doe Officer used his baton to strike her in her chest and abdomen even though she offered no

resistance and complied with these Officers' commands."). Plaintiffs' theory of liability against Chief Newsham relies on his micromanaging these decisions, but there is no allegation that Chief Newsham ordered these *particular* actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (holding under § 1983, "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

Similarly, Plaintiffs do not allege any facts to support their First Amendment claim against Chief Newsham. Although Plaintiffs argue that it was clearly established as unconstitutional "to order the use of force against Plaintiffs because they engaged in protest activity," Pls.' Opp'n at 20, Plaintiffs offer no facts to support the conclusion that Chief Newsham actually made such an order. The First Amended Complaint alleges "[u]pon information and belief, Defendant Newsham . . . ordered, directed, authorized, and affirmatively caused . . . the targeted kettling of, use of force against, and detentions and arrests of Plaintiffs for misdemeanor curfew infractions because they were engaged in protected speech activity." First Am. Compl. ¶ 102. But these allegations are "no more than conclusions [and] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Without factual support, Plaintiffs' First Amendment claims against Chief Newsham fail.

The case law identified by Plaintiffs is of no moment, because Plaintiffs have not properly alleged Chief Newsham violated the rights discussed in those cases. Because Plaintiff cannot show existing law "placed the constitutionality of [Chief Newsham's] conduct beyond debate," *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018), Chief Newsham is entitled to qualified immunity on Counts I and II. Accordingly, the Court should dismiss these counts against him.

### III. Plaintiffs Fail to Allege Any Conditions of Confinement Were Caused by Retaliatory Animus (Count II).

Plaintiffs have not alleged any facts to show that the conditions on Swann Street or at the Blue Plains academy were the result of any retaliatory animus. As Plaintiffs acknowledge, to establish a prima facie case of retaliation, Plaintiffs must show that "a causal connection exists between the exercise of the constitutional right and the adverse action taken." Pls.' Opp'n at 22 (quoting *Pinson v. U.S. Dep't of Just.*, 246 F. Supp. 3d 211, 221 (D.D.C. 2017)); *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016)). Plaintiffs fail to do so.

"It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Plaintiffs do not allege that their conditions of confinement on Swann Street or at the Blue Plains academy were imposed to retaliate against First Amendment-protected activity, and that is fatal to their claim. By contrast, Plaintiffs do allege that they were arrested because of their protected activity and that they were subject to force because of their activity. *See* Pls.' Opp'n at 22–23. But Plaintiffs allege no facts to support their contention that their post-arrest conditions of confinement were imposed to retaliate. Although Plaintiffs conclude "Defendants detained Plaintiffs in this manner because they had been engaged in protest activities," First Am. Compl. ¶ 101, this bare conclusion is insufficient. *See Iqbal*, 556 U.S. at 678 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Without facts to support this element of their claim, the conditions of confinement allegations in Count II fail as a matter of law, and the Defendants are entitled to dismissal of this portion of Plaintiffs' claim.

## IV. The First Amendment Assemblies Act Does Not Establish a Standard for a Claim of Negligence Per Se (Count IV).

The First Amendment Assemblies Act (FAAA)[4] does not establish specific standards that could support a claim of negligence per se. Plaintiffs argue that "[t]he text of the statute is the best evidence" of its specificity. Pls.' Opp'n [28] at 25. The District agrees. When the statutory provisions Plaintiffs rely upon are read in their entirety, rather than the cherry-picked words and phrases Plaintiffs cite, the statute does not provide the level of specificity required for a claim of negligence per se.

*First*, the FAAA provides MPD with discretion on how to respond. Plaintiffs stress that the "provisions at issue speak in terms of what MPD 'shall' or 'shall not' do." Pls.' Opp'n [28] at 26. For example, Plaintiffs argue that D.C. Code § 5-331.07(e) "contains precise protocols to guide MPD's dispersal of a crowd" beyond the common law reasonableness standard. Pls.' Opp'n [28] at 26. But the provision states in full:

> *If and when the MPD determines* that a First Amendment assembly, or part thereof, should be dispersed, the MPD shall issue at least one clearly audible and understandable order to disperse using an amplification system or device, and shall provide the participants a reasonable and adequate time to disperse and a clear and safe route for dispersal.

D.C. Code § 5-331.07(e)(1) (emphasis added). The provision at issue therefore begins with a threshold question of discretion. Plaintiffs do not and cannot allege that the FAAA requires MPD to disperse crowds rather than making arrests. D.C. Code § 5-331.07(c) explicitly permits MPD to respond to unlawful conduct by "dispersing, controlling *or arresting* the persons engaged in such conduct." D.C. Code § 5-331.07(c) (emphasis added). Plaintiffs are correct that

---

[4] The FAAA was amended after the events at issue in this case. As all parties have implicitly agreed by quoting and citing to the previous version, the Court should apply the law that was in effect in June 2020.

11

"[i]n certain circumstances," the statute requires MPD to take specific actions. Pls.' Opp'n [28] at 26. But the circumstances under which these requirements beyond reasonable care apply are "if and when" MPD has made the discretionary determination to disperse a crowd. D.C. Code § 5-331.07(e)(1). The grant of discretion to MPD to determine if an assembly should be dispersed, as well as the portions of the statute that merely restate the general reasonableness standard, do not "enable a fact finder to decide whether the statute has been violated without resorting to a reasonable care analysis." Tr. of Oral Decision [24-1] at 33, *Horse v. District of Columbia*, No. 1:17-cv-01216 (D.D.C. Sept. 27, 2019).

Plaintiffs claim that they have sufficiently alleged that MPD in fact made the decision to disperse the crowd on Swann Street to survive a motion to dismiss on this count. Pls.' Opp'n [28] at 30. This is wrong for two reasons: Plaintiffs have not sufficiently alleged that such a determination was made, but even if they had, the statute provides MPD discretion and merely reiterates a common law reasonableness standard. Plaintiffs' bare assertion that "a high-ranking MPD official directed MPD Officers to disperse the crowd," First Am. Compl. [18] ¶ 49, amounts to nothing but a "formulaic recitation of the elements" of their claim. *Ashcroft v. Iqbal*, 556 U.S. at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And Plaintiffs' claim is belied by the factual allegations they do make: namely, that they were detained on Swann Street while MPD effectuated arrests. First Am. Compl. [18] ¶ 5. Plaintiffs cannot credibly allege that MPD made a determination to both disperse the crowd and detain them. Moreover, as Plaintiffs acknowledge, a curfew order was in place, *id.* ¶ 6, thus distinguishing this from other situations in which a peaceful crowd became unruly. Plaintiffs cite no authority that MPD was required to disperse a crowd under these circumstances. And even assuming MPD did order the crowd to disperse, the statute requires that MPD allow "a reasonable and adequate time

12

to disperse and a clear and safe route for dispersal." D.C. Code § 5-331.07(e)(1). As such, one cannot "readily imagine" a defendant meeting the common law standard but not the statutory one because the statute itself turns on discretionary determinations and questions of "reasonableness." *Sibert-Dean v. Washington Metro. Area Transit Auth.*, 721 F.3d 699, 704 (D.C. Cir. 2013). This provision thus cannot support a claim for negligence per se. *See* Tr. of Oral Decision [24-1] at 33.

*Second*, the alternate statutory provision on which Plaintiffs rely, D.C. Code § 5-331.16(b)(2), similarly cannot support a claim for negligence per se. Plaintiffs again focus on only one part of that provision to deflect from common law reasonableness analysis, but their First Amended Complaint makes clear that they are alleging the "use of chemical irritants was not *reasonable or necessary* to protect officers or others from physical harm, as Plaintiffs were not committing acts of public disobedience endangering public safety and security." First. Am. Compl. [18] ¶ 128 (citing D.C. Code § 5-331.16(b)(2)) (emphasis added). Both the statute and Plaintiffs' uses of the phrase "reasonable and necessary" prevent a fact finder from determining "whether the officers violated this standard without evaluating their actions against a common law baseline of reasonable behavior." Tr. of Oral Decision [24-1] at 34 (citing *Sibert-Dean*, 721 F.3d at 703). Further, Plaintiffs' bare statement that they "were not committing acts of public disobedience endangering public safety and security," First Am. Compl. [18] § 128, simply restates the language of the statute and is therefore another "formulaic recitation" of the claim. *Iqbal*, 556 U.S. at 681.

*Third, c*ontrary to Plaintiffs' assertions, the Court in *Horse* directly addressed both provisions of the FAAA relied upon in their First Amended Complaint. Tr. of Oral Decision [24-1] at 33–34. Regarding D.C. Code § 5-331.07(e), the Court held:

13

> The first phrase, if and when MPD determines that a First amendment assembly should be dispersed, is necessarily dependent upon the reasonable determination . . . . The statute doesn't set forth the specific guidelines that would enable a fact finder to decide whether the statute has been violated without resorting to a reasonable care analysis.

Tr. of Oral Decision [24-1] at 33. In their opposition, Plaintiffs attempt to neatly extract one phrase from its statutory context because it is inconveniently sandwiched between two phrases that rely on reasonableness determinations. The threshold question of whether MPD made the decision to disperse "is necessarily dependent" on a reasonableness standard, and Plaintiffs cannot skip past it in their attempt to allege negligence per se. While "[t]he question is not whether [the statute] deals with a specific set of circumstances, but what sort of behavior it prescribes for the circumstances it governs," *Sibert-Dean*, 721 F.3d at 704, it cannot be established that the circumstance here is governed by the second phrase of paragraph (e)(1) without meeting the reasonableness hurdle of the first. A determination by MPD to disperse is a necessary predicate for the remaining provisions of the paragraph, and that is a discretionary decision that turns on a reasonableness standard.

Similarly, the Court in *Horse* directly addressed D.C. Code § 5-331.16(b)(2) and determined that it "turn[s] on an analysis of what is reasonable and necessary to protect officers or others." Tr. of Oral Decision [24-1] at 34 (analyzing both paragraphs (b)(1) and (b)(2) of D.C. Code § 5-331.16). And Plaintiffs themselves state that reasonableness determines "whether enough danger is posed to justify using chemical irritants." Pls.' Opp'n [28] at 29 (citing D.C. Code § 5-331.16(b)). Plaintiffs claim that a statute that turns on a reasonable care analysis "can nonetheless support a claim for negligence per se so long as 'reasonableness' is not the only statutory guidepost available." Pls.' Opp'n [28] at 29. The provisions of the FAAA upon which they rely, however, only offer "reasonableness" standards against which to judge the conduct.

14

This count should be dismissed, therefore, because the provisions of the FAAA that Plaintiffs rely on are insufficiently specific to support an allegation of negligence per se.

*Finally*, Plaintiffs' reliance on the legislative history of the First Amendment Assemblies Act is inapposite. First, a court should not consider the legislative history of a statute when its language is unambiguous, as it is here. *See Mohamed v. Palestinian Auth.*, 566 U.S. 449, 458–59 (2012) (quoting *Milavetz, Gallop & Millavetz, P.A. v. United States*, 559 U.S. 229, 236 n.3 (2010)) ("Reliance on legislative history is unnecessary in light of the statute's unambiguous language."). Moreover, even if the Court considers the legislative history of the statute, it does not save Plaintiffs' claim. Plaintiffs claim that the testimony of City Administrator Robert Bobb, Chief of Police Charles Ramsey, and a representative of the Office of the Attorney General for the District of Columbia support their conclusion that the provisions of the FAAA can support a negligence per se claim. Pls.' Opp'n [28] at 26 n.6. But the testimony they rely on concerns other provisions of the statute, particularly the FAAA's allowance of non-permitted demonstrations. D.C. Council Comm. on the Judiciary, *Report on Bill No. 15-968* [28-1] at 24. To the extent that a representative of the Office of the Attorney General for the District of Columbia's testimony in a legislative hearing could inform future courts' interpretations of the law, the representative's testimony simply restated the common law rule that the violation of a statute can constitute negligence per se.[5] He offered no opinion on any of the specific provisions in the bill; rather, his testimony on the issue was concerned with whether a private right of action needed to be included. *Id.* [28-1] at 25.

---

[5] Notably, Plaintiffs provide no authority showing that the testimony by an attorney with the Office of the Attorney General about a draft version of proposed legislation is in any way binding on the court.

15

The FAAA therefore cannot sustain Plaintiffs' claim of negligence per se, and accordingly the Court should dismiss Count IV of the First Amended Complaint.

## CONCLUSION

For these reasons, in addition to those stated in the Defendants' memorandum in support of its motion, the Court should grant the motion and dismiss Counts I, II, and IV of the First Amended Complaint.

Date: August 19, 2021

Respectfully Submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ *Stephanie E. Litos*
STEPHANIE E. LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

/s/ *Matthew Trout*
MATTHEW TROUT [1030119]
PHILIP A. MEDLEY [1010307]
AMANDA C. PESCOVITZ [1735780][6]
Assistant Attorneys General
400 6th Street, N.W.
Washington, D.C. 20001
(202) 724-5695
(202) 724-6590 (fax)
matthew.trout1@dc.gov
philip.medley@dc.gov
amanda.pescovitz1@dc.gov

*Counsel for Defendants*

---

[6] Admitted to the Bar under D.C. App. R. 46-A (Emergency Examination Waiver). Practicing under the direct supervision of Stephanie E. Litos, a member of the D.C. Bar, pursuant to D.C. App. R. 46-A(d)(2).