# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAMELA GOODWIN**, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:21-cv-00806-BAH** |
| **DISTRICT OF COLUMBIA**, *et al.*, | |
| **Defendants.** | |

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1.      On May 25, 2020, George Floyd died while in the custody of Minneapolis police officers.  Ex. 1, Dalton Bennett, *et al.*, *The death of George Floyd: What video and other records show about his final minutes*, Wash. Post, May 30, 2020, at 1, 2020 WLNR 15136139.

2.      There were protests throughout the country in response to the death of George Floyd.  Ex. 2, Deposition of Assistant Chief Jeffery Carroll (Carroll Dep.) at 42:13–16 (Feb. 27, 2024).

3.      Protests in response to the death of George Floyd began in the District on May 29, 2020, and continued for the next several days.  Ex. 2, Carroll Dep. at 53:5–54:7; Ex. 3, Mayor's Order 2020-068, COVID-19 Public Emergency and Declaration of a Second Public Emergency – District-wide Curfew, DC_2021-cv-00806-00005995 (May 31 Curfew Order); Ex. 4, Final Investigative Report re: Swann Street (IAD Report), DC_2021-cv-00806-00000638 at 1–2 (pincites are to original report page numbering beginning on fourth page of document); Ex. 5, Email from Lauren Kelly (May 31, 2020, 06:07 a.m.) (MPD Situational Report (2:00 a.m., May 30, 2020)), DC_2021-cv-00806-00006293–6294; Ex. 6, Email from Lauren Kelly (May 31, 2020, 8:54 a.m.) (MPD Situational Report (4:00 a.m., May 30, 2020)), DC_2021-cv-00806-

00006287–6288; Ex. 7, Email from Erich Koehler (May 31, 2020, 10:43 p.m.) (United States

Park Police (USPP) Situational Report (6:30 p.m., May 31, 2020)), DC_2021-cv-00806-

00014559; Ex. 8, Email from Erich Koehler (June 1, 2020, 2:31 a.m.) (USPP Situational Report

(10:30 p.m., May 31, 2020)), DC_2021-cv-00806-00014566–14567; Ex. 9, Email from NOC

Media Monitoring to noc.mmc@hq.dhs.gov (June 1, 2020, 3:59 p.m.), DC_2021-cv-00806-

00007327.

4.      While many individuals protested peacefully, other individuals used the protests

as an opportunity to engage in riotous acts, including vandalism, looting, arson, and violent

attacks against police officers.  Ex. 10, Deposition of Commander Robert Glover (Glover Dep.)

at 121:7–123:14 (Feb. 16, 2024); Ex. 2, Carroll Dep. at 53:5–54:7, 72:4–73:6; Ex. 11, Deposition

of Officer James Crisman (Crisman Dep.) at 160:6–61:10 (Jan. 16, 2024); Ex. 12, Deposition of

Chief Peter Newsham (Newsham Dep.) at 52:6–53:8; 66:9–21 (Feb. 23, 2024); Ex. 3, May 31

Curfew Order; Ex. 13, Mayor's Order 2020-069, Continuation of District-wide Curfew during

COVID-19 Public Emergency and Second Public Emergency, DC_2021-cv-00806-00017390–

17391 (June 1 Curfew Order); Ex. 5, MPD Situational Report (2:00 a.m., May 30, 2020); Ex. 6,

MPD Situational Report (4:00 a.m., May 30, 2020); Ex. 7, USPP Situational Report (6:30 p.m.,

May 31, 2020); Ex. 8, USPP Situational Report (10:30 p.m., May 31, 2020); Ex. 9, Email from

NOC Media Monitoring to noc.mmc@hq.dhs.gov (June 1, 2020, 3:59 p.m.).

5.      The riotous acts on May 30 and May 31, 2020, primarily occurred at night in the

downtown area.  Ex. 12, Newsham Dep. at 52:6–53:3, 66:9–21; Ex. 2, Carroll Dep. at 53:5–54:7,

63:5–64:19, 72:4–73:6; Ex. 43, Deposition of Lieutenant Andrew Horos (Horos Dep.) at 169:13–

170:8.

6.      Between May 29 and May 31, 2020, eleven police officers were injured, one with a fractured leg, and multiple MPD cruisers were damaged or set on fire.  Ex. 14, MPD Injuries for May 31–June 1, DC_2021-cv-00806-00006625; Ex. 15, MPD Vehicle Damage May 31–June 1, DC_2021-cv-00806-00006626; Ex. 5, MPD Situational Report (2:00 a.m., May 30, 2020); Ex. 6, MPD Situational Report (4:00 a.m., May 30, 2020); Ex. 7, USPP Situational Report (6:30 p.m., May 31, 2020); Ex. 8, USPP Situational Report (10:30 p.m., May 31, 2020); Ex. 9, Email from NOC Media Monitoring to noc.mmc@hq.dhs.gov (June 1, 2020, 3:59 p.m.); Ex. 16, Email from Leeann Turner to Peter Newsham, Chief of Police (June 3, 2020, 12:01 p.m.), DC_2021-cv-00806-00005673–5680.

7.      In response to the acts of vandalism and violence seen on May 29 and May 30, and because of the declared public health state of emergency from COVID-19, Mayor Muriel Bowser issued an order establishing a citywide curfew on May 31, 2020.  Ex. 3, May 31 Curfew Order.

8.      Pursuant to the May 31 Curfew Order, the curfew began at 11:00 p.m. on Sunday, May 31, 2020, and ended at 6:00 a.m. on Monday, June 1, 2020.  Ex. 3, May 31 Curfew Order.

9.      The District government provided notice of the May 31 curfew.  Ex. 17, May 31, 2020 AlertDC Curfew Message, DC_2021-cv-00806-00007152; Ex. 18, Mayor Muriel Bowser (@MayorBowser), X (May 31, 2020, 7:04 p.m.), https://x.com/MayorBowser/status/1267230528002023425.

10.      The news media provided coverage of the May 31 Curfew prior to the curfew going into effect.  Ex. 19, Nicky Robertson & Paul LeBlanc, *DC Mayor Institutes Curfew and Urges Calm After Weekend of Unrest*, CNN (May 31, 2020, 9:28 p.m.), https://www.cnn.com/2020/05/31/politics/dc-protests-white-house-donald-trump-mayor-muriel-bowser/index.html; Ex.

3

20, Matt Blitz, *Mayor Muriel Bowser Institutes a Sunday Night Curfew Starting at 11 P.M.*,
DCist (May 31, 2020, 9:10 p.m.), https://dcist.com/story/20/05/31/mayor-muriel-bower-
institutes-a-sunday-night-curfew-starting-at-11-p-m/; Ex. 21, Natasha Bertrand
(@NatashaBertrand), X (May 31, 2020, 7:54 p.m.), https://twitter.com/NatashaBertrand/status/
1267243070430593025; Ex. 22, Sahil Kapur (@sahilkapur), X (May 31, 2020, 7:55 p.m.),
https://twitter.com/sahilkapur/status/1267243270452674563; Ex. 23, NBC4 Washington
(@nbcwashington), X (May 31, 2020, 7:22 p.m.), https://x.com/nbcwashington/status/
1267234913125830656; Ex. 24, 7News DC (@7NewsDC), X (May 31, 2020, 7:23 p.m.),
https://x.com/7NewsDC/status/1267235193192153095; Ex. 25, Fox 5 DC (@fox5DC), X (May
31, 2020, 7:13 p.m.), https://x.com/fox5dc/status/1267232854808973312; Ex. 26, WAMU 88.5
(@wamu885), X (May 31, 2020, 7:17 p.m.), https://x.com/wamu885/status/
1267233813580648449.

11.     MPD issued a teletype order for its enforcement of the May 31 Curfew that
instructed officers: "When practical, [MPD officers] who observe individuals in violation of the
curfew shall provide a warning advising individuals that they are in violation of the curfew, and
if they remain on public space, are subject to arrest."  Ex. 27, TT 05-074-20 at 1, DC_2021-cv-
00806-00006278.

12.     On May 31, 2020, there was significant property damage, vandalism, looting, and
arson in the District.  Ex. 13, June 1 Curfew Order; Ex. 2, Carroll Dep. at 72:4–73:6; Ex. 28,
Deposition of Captain Daniel Harrington (Harrington Dep.) at 116:8–117:11 (Feb. 6, 2024); Ex.
10, Glover Dep. at 121:7–123:14.

13.     In response to events in the District on May 31, 2020, the Mayor issued an order establishing a citywide curfew from 7 p.m. on June 1, 2020, to 6 a.m. on June 2, 2020 (the June 1 Curfew).  Ex. 13, June 1 Curfew Order.

14.     The June 1 Curfew Order incorporated the factual findings in Mayor's Order 2020-068.  Ex. 13, June 1 Curfew Order.

15.     Mayor Bowser stated in the June 1 Curfew Order that "in multiple areas throughout the District of Columbia, numerous businesses, vehicles, and government buildings have been vandalized, burned or looted," resulting in over 80 arrests—most of which were charged as felonies—and that "vandalism occurred at multiple locations throughout the city, in addition to the rioting in the downtown area" on the night of May 31, 2020.  Ex. 13, June 1 Curfew Order.

16.     Mayor Bowser stated in the June 1 Curfew Order that "[v]andals smashed windows in Northeast DC, upper Northwest DC stretching to Georgetown, and caused extensive damage in the Golden Triangle Business Improvement District, Downtown DC Business Improvement District, and Mount Vernon Triangle Community Improvement District" and that the "[r]ioting and looting affected the operations of District government agencies."  Ex. 13, June 1 Curfew Order.

17.     Mayor Bowser stated in the June 1 Curfew Order that "the District continues to be under a declared public health state of emergency due to COVID-19, and gatherings of more than ten (10) persons are currently prohibited in order to reduce the spread of the disease and to protect public health."  Ex. 13, June 1 Curfew Order.

18.     Under the June 1 Curfew Order "no person, other than persons designated by the Mayor, shall walk, bike, run, loiter, stand, or motor by car or other mode of transport upon any street, alley, park, or other public place within the District." Ex. 13, June 1 Curfew Order.

19.     The June 1 Curfew Order did not apply to "[e]ssential workers, including healthcare personnel and working media with their outlet-issued credentials, when engaged in essential functions, including travel to and from their essential work;" or "[i]ndividuals who are voting and participating in election activities, including poll workers, volunteers, and individuals exercising their right to vote;" nor did the June 1 Curfew Order "prohibit or restrict travel to a hospital or urgent care facility" and "such travel [was not] considered [a] violation of this Order." Ex. 13, June 1 Curfew Order.

20.     The June 1 Curfew Order provided that "[a]ny person who violates the curfew imposed by this Order may be subject to a criminal fine of up to three-hundred dollars ($300) or to imprisonment for not more than ten (10) days pursuant to Title 24 of the District of Columbia Municipal Regulations § 2203.4." Ex. 13, June 1 Curfew Order.

21.     The June 1 Curfew Order did not require police officers to give individuals an opportunity to disperse before arresting them for violating the curfew. Ex. 13, June 1 Curfew Order.

22.     The District government, including MPD officers, provided notice of the June 1 Curfew prior to the curfew going into effect. Ex. 29, Mayor Muriel Bowser (@MayorBowser), X (June 1, 2020, 5:34 PM), https://x.com/MayorBowser/status/1267570116713209858; Ex. 30, Press Release, Mayor Bowser, *Mayor Bowser Orders Curfew* (June 1, 2020), https://mayor.dc.gov/release/mayor-bowser-orders-curfew; Ex. 2, Carroll Dep. at 41:17–42:10,

112:3–113:4, 116:12–117:13; Ex. 43, Horos Dep. at 150:16–152:6; Ex. 10, Glover Dep. at

73:11–21, 128:11–129:1.

23.     MPD officers provided notice of the curfew after 7 p.m. on June 1, 2020.  Ex. 2,

Carroll Dep. at 144:12–145:5, 151:17–152:18; Ex. 43, Horos Dep. at 150:16–152:6; Ex. 10,

Glover Dep. at 131:11–132:7.

24.     The news media provided coverage of the June 1 Curfew prior to the curfew

going into effect.  Ex. 31, Fox 5 DC (@Fox5DC), X (June 1, 2020, 6:14 p.m.),

https://x.com/fox5dc/status/1267580382192578565; Ex. 32, 7News DC (@7NewsDC), X (June

1, 2020, 3:23 p.m.), https://x.com/7NewsDC/status/1267537175513567236; Ex. 33, NBC4

Washington (@nbcwashington), X (June 1, 2020, 5:04 p.m.); Ex. 34, WUSA9 (@wusa9), X

(June 1, 2020, 3:33 p.m.), https://x.com/wusa9/status/1267539684990898177; Ex. 35, Jane

Recker, *Mayor Bowser Announces 7 PM Citywide Curfew for DC*, Washingtonian (June 1,

2020), https://www.washingtonian.com/2020/06/01/mayor-bowser-announces-7-pm-citywide-

curfew-for-dc/; Ex. 36, Elizabeth O'Gorek, *Bowser Orders Two Day 7 pm Curfew*, HillRag

(June 1, 2020), https://www.hillrag.com/2020/06/01/mayor-imposes-two-day-7-pm-curfew-in-

dc/ ; Ex. 37, Will Vitka, *Bowser orders new curfew; 'sad and angry' after destruction, mayhem

in DC during protests*, WTOP (June 1, 2020, 11:57 a.m.), https://wtop.com/dc/2020/06/sad-and-

angry-after-destruction-mayhem-in-dc-duringprotests/; Ex. 38, Rule 30(b)(6) Deposition of

District of Columbia (District Dep.) at 143:1–6 (Mar. 8, 2024); Ex. 10, Glover Dep. at 73:14–19.

25.     Commander Robert Glover was the incident commander on June 1, 2020.  Ex. 2,

Carroll Dep. at 95:10–97:19.

26.     As incident commander, Commander Glover was in charge of overall operations.

Ex. 2, Carroll Dep. at 95:10–100:13; Ex. 12, Newsham Dep. at 113:19–114:11.

27.     MPD issued a teletype order for its enforcement of the June 1 Curfew that instructed officers: "When practical, [MPD officers] who observe individuals in violation of the curfew shall provide a warning advising individuals that they are in violation of the curfew, and if they remain on public space, are subject to arrest (e.g., 'A citywide curfew is in effect from 7:00 pm tonight until 6:00 am tomorrow.  You are in violation of the curfew.  If you remain on public space, you are subject to arrest.')."  Ex. 39, TT 06-002-20 at 1, DC_2021-cv-00806-00015337.

28.     The goal of MPD officials was for individuals to voluntarily comply with the curfew.  Ex. 40, TT 05-074-20, DC_2021-cv-00806-00006278; Ex. 39, TT 06-002-20 at 1, DC_2021-cv-00806-00015337; Ex. 41, Radio Run at 1:58:35–1:58:40, DC_2021-cv-00806-00000345[1]; Ex. 42, Radio Run Tr. at 138, DC_2021-cv-00806-00018360; Ex. 12, Newsham Dep. at 83:12–86:10, 103:1–04:16; Ex. 10, Glover Dep. at 106:19–108:16, 245:3–5; Ex. 2, Carroll Dep. at 112:3–115:8, 120:12–121:3, 154:18–21, 161:6–62:21; Ex. 43, Horos Dep. at 201:10–202:7; Ex. 44, Deposition of Lieutenant Carlos Mejia (Mejia Dep.) at 145:18–19 (Dec. 6, 2023).

29.     Between June 1, 2020, at 7:00 p.m. and June 2, 2020, at 6:00 a.m., 284 individuals were arrested for violating the June 1 Curfew.  Ex. 45, Arrest Query – Curfew_Public Narratives.xlsx, DC_2021-cv-00806-00016492.

---

[1]     The "Radio Run" is a recording of MPD communications over the Special Operations Division (SOD) radio channel on June 1, 2020.  The stated times refer to times of the recording.  The Radio Run is a compressed file and it does not proceed chronologically, *i.e.*, one minute of elapsed time during the Radio Run likely corresponds to more than one minute of real time.  For ease of reference, Defendants also cite a transcript of MPD's communications over the SOD channel on June 1, 2020.

30.     Between June 1, 2020, at 7:00 p.m. and June 2, 2020 at 6:00 a.m., at least 13 curfew violators were arrested individually or in small groups who were not engaged in First Amendment activities immediately prior to being arrested.  Ex. 46, CCN_20081398 – Combined Reports, DC_2021-cv-00806-00019985; Ex. 47, CCN_20081525 - Combined Reports, DC_2021-cv-00806-00019803; Ex. 48, CCN_20081537 - Combined Reports, DC_2021-cv-00806-00019928; Ex. 49, CCN_20081457 - Combined Reports, DC_2021-cv-00806-00019939; Ex. 50, CCN_20081437 - Combined Reports, DC_2021-cv-00806-00019969.

31.     At approximately 9:47 p.m. on June 1, 2020, three individuals "were observed in the 3200 block of P Street, NW in violation of the [June 1 Curfew]," and were "subsequently stopped . . . and placed under arrest . . . and transported by Wagon 21E to the Second District Station for processing."  Ex. 46, CCN_20081398 – Combined Reports, DC_2021-cv-00806-00019985.

32.     At approximately 11:50 p.m. on June 1, 2020, "[f]our individuals were observed in the 1400 block of L St, NW in violation of [the June 1 Curfew].  They were stopped and placed under arrest. . . . During search incident to arrest of [one arrestee], one brass knuckles were found inside [arrestee's] right side pocket."  Ex. 47, CCN_20081525 - Combined Reports, DC_2021-cv-00806-00019803.

33.     At approximately 1:00 a.m. on June 2, 2020, an individual "was walking down the street . . . in the 1200 [block] of Connecticut Ave, NW when he was given a verbal warning by Cruiser 12 to make his way home . . . and that he was in violation of the [June 1 Curfew].  At approximately [1:10 A.M., the individual] was still lingering in the area. . . . As the undersigned Officer approached [the individual] he then began to run northbound . . . trying to elude officers. The undersigned Officer gave chase and performed a take down in front of 21 DuPont Cir., NW

9

to stop [the individual] from continuing to flee. . . . [The individual] was placed under arrest for Curfew Violation and Resisting Arrest" and "taken to the Second District for processing."  Ex. 48, CCN_20081537 - Combined Reports, DC_2021-cv-00806–00019928.

34.    At approximately 11:00 p.m. on June 1, 2020, MPD officers stopped one individual on the 2700 block of Dumbarton Street, NW, and two individuals on the 2800 block of Dumbarton Street, NW, and subsequently placed them under arrest for curfew violation and transported them to the Second District for processing.  Ex. 49, CCN_20081457 - Combined Reports, DC_2021-cv-00806-00019939.

35.    At approximately 10:35 p.m. on June 1, 2020, MPD officers stopped two individuals "in reference to violating [the June 1 Curfew]."  The individuals "were giv[en] multiple warnings . . . to disperse and go home.  [The individuals] left the location but came back to the same location.  They were stopped by MPD" and subsequently "placed under arrest for curfew violation and transported to the Second District for processing."  Ex. 50, CCN_20081437 - Combined Reports, DC_2021-cv-00806-00019969.

36.    At 6:42 p.m. on June 1, 2020, using a long-range acoustic device (LRAD), MPD announced at 14th and H Streets, NW, that the citywide curfew would be starting at 7 p.m. and those remaining on the streets would be subject to arrest.  Ex. 52, Body-Worn Camera Footage, Officer Quarles, DC_2021-cv-00806-00015033, at 18:42:10–18:43:00 EDT.

37.    On June 1, 2020, at approximately 6:45 p.m., the United States Park Police dispersed a large crowd from Lafayette Park.  Ex. 4, IAD Report at 2.

38.    On June 1, 2020, at approximately 6:45 p.m., Plaintiff Goodwin was in the area near and to the north of the White House.  Ex. 53, Deposition of Pamela Goodwin (Goodwin Dep.) at 37:6–10, 38:18–39:7 (Apr. 2, 2024).

39.     On June 1, 2020, for at least a couple of hours prior to sunset, Plaintiff Surio was north of Lafayette Park on Vermont Avenue.  Ex. 54, Deposition of Priyanka Surio (Surio Dep.) at 131:22–132:2, 132:19–133:3, 135:9, 141:19–142:13 (Feb. 16, 2024).

40.     On June 1, 2020, at approximately 8:15 p.m., Plaintiff Remick was in the area of McPherson Square.  Ex. 55, Deposition of Osea Remick (Remick Dep.) at 30:19–31:1, 32:17–35:1 (Jan. 16, 2024); Ex. 56, Body-Worn Camera Footage, Sergeant Schmoeller, DC_2021-cv-00806-00018227, at 00:14:17-00:16:23 GMT (20:14:17-20:16:23 EDT)[2]; Ex. 57, Remick Arrest Photo, DC_2021-cv-00806-00005613.

41.     On June 1, 2020, beginning around 6:30 p.m., Plaintiff Pearlmutter was in or around McPherson Square.  Ex. 58, Deposition of Jesse Pearlmutter (Pearlmutter Dep.) at 79:6–9 (Feb. 8, 2024).

42.     On June 1, 2020, prior to 6:45 p.m., Plaintiff Troper was near the northeast corner of Lafayette Park.  Ex. 59, Deposition of Eliana Troper (Troper Dep.) at 155:8–157:14 (Feb. 28, 2024).

43.     On June 1, 2020, at approximately 6:45 p.m., Plaintiff Lazo was in Lafayette Park.  Ex. 60, Deposition of Jenny Lazo (Lazo Dep.) at 54:11–59:5 (Feb. 5, 2024).

44.     On June 1, 2020, after 5:00 p.m. and before 8:30 p.m., Plaintiff Lane walked from the National Mall to the White House and walked near McPherson Square.  Ex. 61, Deposition of Allison Lane (Lane Dep.) at 43:21–22; 48:5–56:19 (Jan. 18, 2024).

45.     Between 6:53 and 7:00 p.m., MPD made additional announcements near Lafayette Park using an LRAD that the citywide curfew would be starting at 7 p.m., and those

---

[2]     Sergeant Schmoeller's BWC is time-stamped in Greenwich Mean Time, or Zulu time, which was four hours ahead of Eastern Daylight Time on June 1, 2020.

remaining in a public space would be subject to arrest.  Ex. 62, Body-Worn Camera Footage,

Officer Tindall, DC_2021-cv-00806-00018218, at 18:53:30-19:00:00 EDT.

46.     At 7:01 p.m., using an LRAD, MPD announced at the intersection of 17th Street

and Pennsylvania Avenue, NW: "A citywide curfew is in effect from 7:00 p.m. tonight until 6:00

a.m. tomorrow morning.  You are now in violation of the Mayor's Curfew.  If you are in a public

space, you are subject to arrest."  Ex. 62, Body-Worn Camera Footage, Officer Tindall,

DC_2021-cv-00806-00018218, at 19:01:30-19:01:45 EDT.

47.     MPD issued the same curfew warning over the LRAD twenty times between 7:02

p.m. and 7:20 p.m.  Ex. 62, Body-Worn Camera Footage, Officer Tindall, DC_2021-cv-00806-

00018218, at 19:02:47-19:03:00 EDT (second post-7 P.M. warning) ; 19:05:30-19:05:42 EDT

(third warning); 19:07:35-19:07:48 EDT (fourth warning), 19:08:27-19:08:40 EDT (fifth

warning), 19:09:10–19:09:21 EDT (sixth warning), 19:09:57–19:10:09 EDT (seventh warning),

19:10:38–19:10:50 EDT (eighth warning), 19:11:15-19:11:27 EDT (ninth warning), 19:12:08-

19:12:20 EDT (tenth warning), 19:12:53-19:13:03 EDT (eleventh warning), 19:13:32-19:13:43

EDT (twelfth warning); 19:14:07-19:14:18 EDT (thirteenth warning); 19:15:28-19:15:40 EDT

(fourteenth warning); 19:16:13-19:16:25 EDT (fifteenth warning); 19:17:12-19:17:25 EDT

(sixteenth warning); 19:17:56-19:18:08 EDT (seventeenth warning); 19:18:15-19:18:25 EDT

(eighteenth warning); 19:18:41-19:18:52 EDT (nineteenth warning); 19:19:35-19:19:47 EDT

(twentieth warning); 19:20:03-19:20:14 EDT (twenty-first warning).

48.     At 7:03 p.m. and 7:06 p.m., curfew warnings were made to individuals violating

curfew near the intersection of 15th and H Streets, NW.  Ex. 63, Body-Worn Camera Footage,

Officer Johnson, DC_2021-cv-00806-00018226, at 19:03:37-19:04:03 EDT, 19:06:45-19:06:57

EDT.

49.    After 7 p.m., MPD officers observed a group of approximately 200–300 individuals in the vicinity of 16th and Eye Streets, NW, despite curfew warnings being given in that area.  Ex. 41, Radio Run at 1:38:10-1:40:30; Ex. 42, Radio Run Tr. at 114–17.

50.    The decision was made to encircle and arrest the group near 16th and Eye Streets, NW, for violating the curfew shortly after 7:47 p.m.  Ex. 41, Radio Run at 1:38:10–1:40:30; Ex. 42, Radio Run Tr. at 114–17, 133:14–18.

51.    Approximately fifty individuals who failed to disperse were arrested on the 1600 block of Eye Street for violating the June 1 Curfew Order.  Ex. 10, Glover Dep. at 70:15–17, 132:1–7, 133:1–134:13; Ex. 41, Radio Run at 1:46:54-1:54:50; Ex. 42, Radio Run Tr. at 125:1–133:18; Ex. 64, Deposition of Commander John Haines (Haines Dep.) at 36:15–22 (Mar. 5, 2024); Ex. 65, High Volume Arrest and Processing After Action–June 2020 Events (After Action Report) at 3–5, DC_2021-cv-00806-00019609–19611; Ex. 45, Arrest Query – Curfew_Public Narratives.xlsx, DC_2021-cv-00806-00016492 (detailing 45 arrests at the 1600 block of Eye Street).

52.    Around the same time MPD officers were carrying out the mass arrest on the 1600 block of Eye Street, a large crowd was observed near the 900 block of 15th Street, NW. Ex. 41, Radio Run at 1:45:35-1:45:45; Ex. 42, Radio Run Tr. at 123, 129–30.

53.    Around the same time MPD officers were carrying out the mass arrest on the 1600 block of Eye Street, another large crowd of approximately 300 people was observed near the 800 block of Vermont Ave., NW.  Ex. 41, Radio Run at 1:50:32-1:51:35; Ex. 42, Radio Run Tr. at 129–30.

54.    MPD officers issued curfew warnings near the intersection of 15th and K Streets and Vermont Avenue, NW at the northeast corner of McPherson Square around 8:15 p.m.  Ex.

56, Body-Worn Camera Footage, Sergeant Schmoeller, DC_2021-cv-00806-00018227, at 00:14:17-00:16:23 GMT (20:14:17-20:16:23 EDT).

55.     Plaintiff Remick was in the immediate vicinity of the curfew warning given at the northeast corner of McPherson Square at 8:15 p.m.  Ex. 56, Body-Worn Camera Footage, Sergeant Schmoeller, DC_2021-cv-00806-00018227, at 00:14:17-00:16:23 GMT (20:14:17-20:16:23 EDT); Ex. 57, Remick Arrest Photo, DC_2021-cv-00806-00005613.

56.     Plaintiff Lane heard curfew warnings and orders to disperse while in or around McPherson Square.  Ex. 61, Lane Dep. at 53:14-54:15.

57.     MPD officers observed a group of about 1,000 individuals moving northbound on 14th Street, NW.  Ex. 41, Radio Run at 2:01:40–2:01:45; Ex. 42, Radio Run Tr. at 141; Ex. 59, Troper Dep. at 174:13–14.

58.     As the group proceeded up 14th Street toward U Street, NW, MPD officers observed individuals within the group engaging in vandalism, including spray painting buildings, a bus stop, a vehicle, and the road.  Ex. 41, Radio Run at 2:06:42-2:06:44, 2:08:30-2:08:40; Ex. 42, Radio Run Tr. at 147–149; Ex. 44, Mejia Dep. at 182:8–14, 184:25–185:5; Ex. 4, IAD Report at 21, 37, 42–43.

59.     While the group was marching north on 14th Street, NW, a curfew violator within the group observed others within the group engaging in vandalism and throwing water bottles and bricks.  The curfew violator was hit by a brick thrown by another curfew violator within the group.  Ex. 4, IAD Report at 21.

60.     The windows of at least two stores on 14th Street, NW, were broken on the night of June 1, 2020, prior to 9:00 P.M.  Ex. 66, Body-Worn Camera Footage, Officer Singh, DC_2021-cv-00806-00018228, at 00:57:46-01:04:41 GMT (22:57:46-23:04:41 EDT).

61.    MPD officers responded to The Shade Store, located at 1522 14th St, NW (14th Street and Church Street), at 8:57 P.M.  Ex. 66, Body-Worn Camera Footage, Officer Singh, DC_2021-cv-00806-00018228, at 00:57:46-01:04:41 GMT (22:57:46-23:04:41 EDT).

62.    The windows of The Shade Store were shattered before officers arrived.  Ex. 66, Body-Worn Camera Footage, Officer Singh, DC_2021-cv-00806-00018228, at 00:57:46– 01:04:41 GMT (22:57:46-23:04:41 EDT).

63.    MPD officers responded to the CVS pharmacy at 2129 14th Street, NW (14th Street and W Street), at 8:59 p.m.  Ex. 72, Body-Worn Camera Footage, Officer Bolton, DC_2021-cv-00806-00018235, at 20:59:24–21:02:06 EDT.

64.    A window of the CVS pharmacy had been shattered.  Ex. 72, Body-Worn Camera Footage, Officer Bolton, DC_2021-cv-00806-00018235, at 20:59:24–21:02:06 EDT.

65.    The windows of a police cruiser parked at the intersection of 14th Street and Clifton Street, NW, were broken and the cruiser itself set on fire between 8:51 p.m. and 9:22 p.m.  Ex. 68, Body-Worn Camera Footage, Officer Torres, DC_2021-cv-00806-00018220, at 21:22:45–21:23:34 EDT; Ex. 69, Body-Worn Camera Footage, Officer Lucas, DC_2021-cv-00806-00018222, at 20:51:37–20:51:46 EDT.

66.    Lieutenant Mejia made several curfew warnings over his cruiser's public address system, informing individuals in the crowd going north on 14th Street that the curfew was in effect and that they needed to disperse.  Ex. 44, Mejia Dep. at 151:22–156:1; 158:1–22.

67.    The individuals who were marching north on 14th Street, and other individuals who were in violation of the June 1 Curfew Order, were not part of a First Amendment assembly.  Ex. 10, Glover Dep. at 73:11–21, 104:9–107:3, 109:11–19; Ex. 12, Newsham Dep. at

15

85–86, 96:6–99:19; Ex. 2, Carroll Dep. at 35:21–36:13, 41:1–42:10, 224:9–16; Ex. 38, District

Dep. at 106:3–107:4.

68.    Plaintiff Lane became aware of the June 1 Curfew from police officers at 15th

Street, NW, near McPherson Square and the police officers there gave orders to disperse, prior to

her arrest on Swann Street.  Ex. 61, Lane Dep. at 54:6–15.

69.    Plaintiff Remick was aware of the June 1 Curfew prior to 7:00 p.m. on June 1,

2020.  Ex. 55, Remick Dep. at 35:19–36:3; Ex. 70, Pls.' Resps. to Defs.' Requests for Admission

at 2.

70.    Plaintiff Troper was aware of the June 1 Curfew prior to 7:00 p.m. on June 1,

2020.  Ex. 59, Troper Dep. at 154:10–12; Ex. 70, Pls.' Resps. to Defs.' Requests for Admission

at 2.

71.    Plaintiff Pearlmutter was aware of the June 1 Curfew prior to 7:00 p.m. on June 1,

2020.  Ex. 58, Pearlmutter Dep. at 66:10–14; Ex. 70, Pls.' Resps. to Defs.' Requests for

Admission at 2.

72.    Plaintiff Lazo sent a text message at 5:59 p.m. on June 1, 2020, that read: "mayor

declared curfew for 7pm."  Ex. 71, Lazo Curfew Text, PL0001034.

73.    Plaintiff Surio testified that she heard there might be a curfew from other

protesters around her prior to arriving on Swann Street.  Ex. 54, Surio Dep. at 134:4–18, 170:1–

15.

74.     Plaintiff Goodwin was on a walk with her niece and followed the group of

curfew violators that ended up on Swann Street.  Ex. 53, Goodwin Dep. at 34:16–35:13, 36:6–

37:1; 51:15–52:6.

75.    Plaintiff Goodwin was not engaged in First Amendment activity or protests at any time on June 1, 2020.  Ex. 53, Goodwin Dep. at 34:16–35:13, 36:6–37:1; 51:15–52:6; 75:14–19; 91:22–92:15; 104:3–8.

76.    Plaintiff Lane remained in a public space in the District of Columbia for more than two hours during the June 1 Curfew.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 5.

77.    Plaintiff Remick remained in a public space in the District of Columbia for more than two hours during the June 1 Curfew.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 5.

78.    Plaintiff Troper remained in a public space in the District of Columbia for more than two hours during the June 1 Curfew.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 5.

79.    Plaintiff Pearlmutter remained in a public space in the District of Columbia for more than two hours during the June 1 Curfew.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 5.

80.    Plaintiff Lazo remained in a public space in the District of Columbia for more than two hours during the June 1 Curfew.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 5.

81.    Plaintiff Surio remained in a public space in the District of Columbia for more than two hours during the June 1 Curfew.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 5.

82.     Plaintiff Goodwin remained in a public space in the District of Columbia for more than two hours during the June 1 Curfew.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 5.

83.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Lane was not performing any work for any employer.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

84.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Remick was not performing any work for any employer.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

85.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Troper was not performing any work for any employer.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

86.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Pearlmutter was not performing any work for any employer.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

87.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Lazo was not performing any work for any employer.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

88.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Surio was not performing any work for any employer.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

89.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Goodwin was not performing any work for any employer.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

90.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Lane was not engaged in any election activities.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

91.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Remick was not engaged in any election activities.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

92.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Troper was not engaged in any election activities.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

93.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Pearlmutter was not engaged in any election activities.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

94.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Lazo was not engaged in any election activities.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

95.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Surio was not engaged in any election activities.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

96.     Between 7 p.m. and 11:59 p.m. on June 1, 2020, Plaintiff Goodwin was not engaged in any election activities.  Ex. 70, Pls.' Resps. to Defs.' Requests for Admission at 4.

97.     Around 8:40 p.m., the group of curfew violators stopped marching north on 14th Street where it intersects with Belmont Street, NW.  Ex. 67, Body-Worn Camera Footage, Officer Bolton, DC_2021-cv-00806-00018235, at 20:44:13–20:47:13 EDT; Ex. 58, Pearlmutter Dep. at 85:5–17.

98.     Curfew violators formed a line across 14th Street as MPD vehicles approached from the south.  Ex. 73, Belmont Street Cell Phone Video, PL_0000259, at 0:00–1:00; Ex. 58, Pearlmutter Dep. at 94:6–97:1, 98:12–99:19.

99.     Curfew violators chanted, yelled, and threw projectiles at the MPD vehicles to their south.  Ex. 67, Body-Worn Camera Footage, Officer Bolton, DC_2021-cv-00806-00018235, at 20:44:13–20:47:13 EDT; Ex. 73, Belmont Street Cell Phone Video, PL_0000259, at 0:00–1:17; Ex. 58, Pearlmutter Dep. at 98:12–99:19.  Shortly thereafter, the MPD officers vacated the area by driving their vehicles west down Belmont Street and south down 14th Street. Ex. 73, Belmont Street Cell Phone Video, PL_0000259, at 0:05–2:04; Ex. 58, Pearlmutter Dep. at 102:4–21.

100.    By 8:45 p.m., the group of curfew violators started moving south on 14th Street toward its intersection with Florida Avenue.  Ex. 73, Belmont Street Cell Phone Video, PL_0000259, at 1:10–2:04; Ex. 67, Body-Worn Camera Footage Officer Bolton, DC_2021-cv-00806-00018235, at 20:44:13–20:47:13 EDT; Ex. 58, Pearlmutter Dep. at 102:4–21.

101.    As curfew violators continued moving south on 14th Street, MPD vehicles vacated the intersection of 14th Street and Florida Avenue.  Ex. 74, Body-Worn Camera Footage, Officer Miller, DC_2021-cv-00806-00018221, at 20:44:57–20:47:58 EDT; Ex. 75, Florida Ave. Cell Phone Video, PL0000243, at 0:00–0:30.

102.    After MPD vehicles vacated the intersection of 14th Street and Florida Avenue, individuals within the group of curfew violators expressed different ideas about where the group should go next.  Ex. 75, Florida Ave. Cell Phone Video, PL0000243, at 0:00–1:13; Ex. 76, Lazo Cell Phone Video, PL_0000501, at 0:00–2:45.

103.    Initially, some curfew violators started to continue walking south on 14th Street below Florida Avenue.  Ex. 75, Florida Ave. Cell Phone Video, PL0000243, at 0:00–0:30.

104.    One curfew violator who initially continued south on 14th Street asked others, "where you trying to go?"  Another curfew violator responded, "bro, we're trying to stay together."  The first curfew violator then asked, "right, but where's the goal?  What's the target?"  The other curfew violator responded, "bro, the target is our streets; these are our streets."  Ex. 75, Florida Ave. Cell Phone Video, PL0000243, at 0:38–0:50.

105.    Other curfew violators within the group, including Plaintiff Lazo, began walking north on 14th Street from Florida Avenue.  Ex. 76, Lazo Cell Phone Video, PL_0000501, at 0:00–2:45.

106.    Shortly thereafter, another individual in the group of curfew violators began loudly yelling "this way!" to the group and motioning with his arms in the direction of Florida Avenue westbound.  Ex. 76, Lazo Cell Phone Video, PL_0000501, at 2:00–2:45.

107.    The group began walking west on Florida Avenue toward 15th Street.  Ex. 76, Lazo Cell Phone Video, PL_0000501, at 2:00–2:45; Ex. 58, Pearlmutter Dep. at 104:13–18.

108.    When the group began walking west on Florida Avenue, it was "a little bit more consolidated than it had been at any point on 14th Street."  Ex. 58, Pearlmutter Dep. at 104:13–18.

109.    From Florida Avenue, the group of curfew violators turned south onto 15th Street.  Ex. 58, Pearlmutter Dep. at 107:21–109:14.

110.    When the group reached U Street, some individuals turned onto U Street.  Ex. 58, Pearlmutter Dep. at 107:21–109:14.

21

111.    Most of the group did not turn onto U Street and continued moving south on 15th
Street.  Ex. 58, Pearlmutter Dep. at 107:21–109:14.

112.    From 15th Street, the group of curfew violators turned east onto the 1400 block of
Swann Street.  Ex. 41, Radio Run at 2:28:26–2:29:43; Ex. 42, Radio Run Tr. at 174–75.

113.    The 1400 block of Swann Street, NW, is a residential street, and vehicle traffic
can only flow one-way in an eastbound direction.  The north and south side are lined with brick
front, attached row homes.  Toward the east end of the 1400 block of Swann Street, NW, there is
an alleyway that runs north and south on both sides of the street.  The alleyway leads out onto T
Street to the north and it leads out onto S Street to the south.  Additionally, there is an alley that
runs east to west behind the residences on the north and south sides of Swann Street.  Ex. 4, IAD
Report at 5.

114.    MPD officers had probable cause to arrest individuals on Swann Street who were
in violation of the curfew.  Ex. 2, Carroll Dep. at 151:17–153:8, 154:7–155:1, 158:9–161:16; Ex.
10, Glover Dep. at 74:11–75:8, 114:13–17; Ex. 12, Newsham Dep. at 96:6–99:19; Ex. 38,
District Dep. at 111:17–113:4, 135:3–136:5.

115.    Individuals who were arrested on Swann Street had an opportunity to disperse and
comply with the curfew prior to arriving on Swann Street.  Ex. 2, Carroll Dep. at 227:1–228:11;
Ex. 43, Horos Dep. at 201:10–202:7; Ex. 10, Glover Dep. at 106:19–108:16, 244:5–245:15; Ex.
38, District Dep. at 111:17–113:4, 142:9–144:20, 157:17–161:5; Ex. 58, Pearlmutter Dep. at
107:21–109:14; Ex. 75, Florida Ave. Cell Phone Video, PL0000243, at 0:00–1:13; Ex. 76, Lazo
Cell Phone Video, PL_0000501, at 0:00–2:45.

116.    Chief Newsham was not consulted in advance about the decision to arrest
individuals on Swann Street.  Ex. 2, Carroll Dep. at 171:11–172:7.

117.    Chief Newsham did not give any order, instruction, or authorization concerning the use of mechanical force or pepper spray on Swann Street.  Ex. 12, Newsham Dep. at 161:17–164:9.

118.    From 14th Street to 15th Street, Swann Street is approximately 0.1 miles in length, or approximately 500–600 feet.  Ex. 77, https://tinyurl.com/yhfhutdv (Google map showing distance from 1400 Swann Street to 1500 Swann Street).

119.    After the group of curfew violators had entered the 1400 block of Swann Street, NW, MPD officers formed a line across Swann Street at its intersection with 15th Street.  Ex. 41, Radio Run at 2:28:26–2:29:43; Ex. 42, Radio Run Tr. at 174–75.

120.    At approximately 9 p.m., MPD officers formed a line across Swann Street near its intersection with 14th Street.  Ex. 41, Radio Run at 2:28:26–2:29:43; Ex. 42, Radio Run Tr. at 174–75.

121.    In addition to forming police lines at Swann Street's intersections with 14th Street and 15th Street, MPD officers also formed police lines in the north-south alleyways intersecting Swann Street toward the 14th Street end of the block.  Ex. 10, Glover Dep. at 194:2–195:19; Ex. 44, Mejia Dep. at 191:20–192:8, 194:10–195:3.

122.    While the police lines on either end of Swann Street maintained their positions, some curfew violators threw objects at the police line on the 15th Street end and climbed onto cars parked on Swann Street.  Ex. 11, Crisman Dep. at 194:14–20; Ex. 78, 15th & Swann Cell Phone Video, PL_0000260, at 0:15–1:00; Ex. 43, Horos Dep. at 207:15–208:8, 221:16–222:5.

123.    On June 1, 2020, and during the prior days, some protestors filled water bottles with chlorine and threw them at MPD officers.  Ex. 11, Crisman Dep. at 129:15–132:20.

124.    Initially, MPD officials intended to move the line of officers near 14th Street westbound on Swann Street because there were fewer curfew violators on the east end of Swann Street.  Ex. 43, Horos Dep. at 196:18–197:5.

125.    At approximately 9:30 p.m., the line of officers on the 15th Street side began moving east on Swann Street.  Ex. 43, Horos Dep. at 198:2–11.

126.    The decision to move the line at that time was made because officers observed multiple curfew violators attempting to break into residences by kicking doors down.  Ex. 43, Horos Dep. at 198:1–200:1, 214:20–215:10; Ex. 11, Crisman Dep. at 190:5–19.

127.    Lt. Horos observed, and Officer Crisman heard, individuals kicking doors of Swann Street residences.  Ex. 43, Horos Dep. at 198:12–200:1; Ex. 11, Crisman Dep. at 190:5–19.

128.    Multiple residents on Swann Street reported that curfew violators were attempting to break into their homes.  Ex. 4, IAD Report at 23–26.

129.    One resident of Swann Street who was in his home the night of June 1, 2020, reported that throughout the night protesters attempted to gain entry into his and his neighbors' residences by attempting to open their front and/or basement doors.  Ex. 4, IAD Report at 24–25.

130.    Plaintiff Pearlmutter observed curfew violators knocking on doors of residences on both sides of Swann Street.  Ex. 58, Pearlmutter Dep. at 180:14–16.

131.    Prior to the police line beginning to move east on Swann Street, NW, Commander Glover left the area to oversee MPD's response to another group of curfew violators.  Ex. 10, Glover Dep. at 226:2–228:4.

132.    Commander Glover did not order the police line formed at 15th Street to move east on Swann Street.  Ex. 10, Glover Dep. at 225:14–226:18.

133.    Commander Glover did not direct, instruct, or authorize Lt. Horos or Officer Crisman to use pepper spray on Swann Street.  Ex. 10, Glover Dep. at 200:22–204:9, 220:5–222:18.

134.    Commander Glover did not observe any use of mechanical force or pepper spray on Swann Street.  Ex. 10, Glover Dep. at 220:5–222:18, 227:13–228:4.

135.    Lt. Mejia was stationed in the north-south alley intersecting Swann Street toward the east, or 14th Street, end of the block.  Ex. 44, Mejia Dep. at 191:20–192:8, 212:12–25.

136.    Lt. Mejia did not give any order, instruction, or authorization concerning the use of mechanical force or pepper spray on Swann Street.  Ex. 44, Mejia Dep. at 203:19–204:21.

137.    Lt. Mejia did not observe any use of mechanical force or pepper spray on Swann Street.  Ex. 44, Mejia Dep. at 214:1–216:13.

138.    As the police line on 15th Street moved east on Swann Street, the officers moved at a half-step and were loudly and repeatedly ordering the curfew violators to "move back, move back."  Ex. 79, Swann Street Overhead Cell Phone Footage, PL_0000325, at 0:00–0:50; Ex. 54, Surio Dep. at 180:6–12; Ex. 55, Remick Dep. at 57:6–12.

139.    Most individuals complied with the order, but several did not.  Ex. 79, Swann Street Overhead Cell Phone Footage, PL_0000325, at 0:00–0:50; Ex. 80, 15th Street Advance Cell Phone Video, PL_0000329, at 0:00–0:46; Ex. 58, Pearlmutter Dep. at 137:10–138:16.

140.    Several individuals initiated contact with MPD officers instead of moving back. For example, one curfew violator stood with his back to the officers and his arms and legs spread, leaning and pushing back on MPD officers as they attempted to advance.  Ex. 80, 15th Street Advance Cell Phone Video, PL_0000329, at 0:25–0:42.

141.    Some individuals threw objects at MPD officers as they moved forward.  Ex. 79, Swann Street Overhead Cell Phone Footage, PL_0000325, at 0:25–0:50; Ex. 81, Body-Worn Camera Footage, Officer Coleman, DC_2021-cv-00806-00014245, at 1:30:08–1:30:32 GMT (21:30:08-21:30:32 EDT); Ex. 43, Horos Dep. at 222:1–4.

142.    In response to this and other instances of curfew violators refusing to move back, officers used police shields and batons to physically move the curfew violators backwards.  Ex. 79, Swann Street Overhead Cell Phone Footage, PL_0000325, at 0:00–0:50; Ex. 80, 15th Street Advance Cell Phone Video, PL_0000329, at 0:00–0:46; Ex. 4, IAD Report at 15.

143.    MPD officers are trained how to use police shields during police responses to large crowds and mass demonstrations.  Ex. 10, Glover Dep. at 198:5–199:1; Ex. 82, Deposition of Sergeant Frank Edwards (Edwards Dep.) at 104:13–105:2 (Mar. 7, 2024); Ex. 83, Deposition of Officer Steven Quarles (Quarles Dep.) at 74:25–75:9 (Jan. 12, 2024).

144.    When using a police shield to move a noncompliant crowd, MPD officers are trained to hold the police shield with two hands, as level as possible, and to issue loud verbal commands of "move back, move back."  Ex. 10, Glover Dep. at 198:5–199:1.

145.    MPD officers are trained how to use batons during police responses to large crowds or mass demonstrations.  Ex. 82, Edwards Dep. at 102:22–103; Ex. 10, Glover Dep. at 198:5–199:3.

146.    Officer Quarles was part of the police line formed on the 15th Street end of Swann Street.  Ex. 84, Body-Worn Camera Footage, Officer Quarles, DC_2021-cv-00806-00011646, at 21:29:31–21:31:00 EDT.

147.    Officer Quarles was using two hands to carry a police shield.  Ex. 84, Body-Worn Camera Footage, Officer Quarles, DC_2021-cv-00806-00011646, at 21:29:31–21:31:00 EDT.

148.    When directed, Officer Quarles began moving east on Swann Street at a half-step while arrestees were ordered to move back.  Ex. 84, Body-Worn Camera Footage, Officer Quarles, DC_2021-cv-00806-00011646, at 21:29:31–21:31:00 EDT; Ex. 83, Quarles Dep. at 73:9–74:16.

149.    Prior to the police line's advance east on Swann Street, Plaintiff Surio was standing "at the front" of the crowd and in front of the police line on the 15th Street end of Swann Street, near Officer Quarles.  Ex. 54, Surio Dep. at 176:10–15.

150.    When the police line started to advance, according to Plaintiff Surio, she and those around her were "kind of moving, but [ ] also trying to stand [their] ground."  Ex. 54, Surio Dep. at 180:12–14.

151.    Officer Quarles moved towards Plaintiff Surio and made contact with her with his shield when she refused to comply with orders to move back.  Ex. 84, Body-Worn Camera Footage, Officer Quarles, DC_2021-cv-00806-00011646, at 21:29:31–21:31:00 EDT.

152.    Plaintiff Surio "didn't get the direct pepper spray."  Ex. 54, Surio Dep. at 187:1–2.

153.    Plaintiff Surio did not seek medical attention for the alleged effects of pepper spray on or after June 1, 2020.  Ex. 54, Surio Dep. at 263:22–264:8.

154.    Prior to the police line's eastward advance on Swann Street, Plaintiff Remick was close to the police line formed at the 15th Street end of the block and standing on the sidewalk on the south side of Swann Street.  Ex. 55, Remick Dep. at 53:6–22.

155.    When the police line started to move eastward on Swann Street, Plaintiff Remick was pushed with "shields or sometimes with the batons held horizontally. . . ."  Ex. 55, Remick Dep. at 58:1–10.

27

156.    While near a parked car and a tree, Plaintiff Remick was pushed approximately five times with a baton held with two hands, with one hand on either end of the baton, and carried horizontal to the ground.  Ex. 55, Remick Dep. at 58:13–19; Ex. 85, Body-Worn Camera Footage, Officer Celano, DC_2021-cv-00806-00014090, at 21:29:23–21:30:19.

157.    At 9:30 p.m., as the police line continued to advance, Plaintiff Remick stopped moving back and stood between a parked car and a sign, despite there being no person or object immediately behind them, and was pushed approximately three times with a baton in the same manner as the previous pushes.  Ex. 85, Body-Worn Camera Footage, Officer Celano, DC_2021-cv-00806-00014090, at 21:30:19–21:31:04.

158.    Towards the end of the police line's advance, Plaintiff Remick was pushed by an MPD officer with two hands, which caused Plaintiff Remick to move backwards, but they did not fall to the ground.  Ex. 86, Body-Worn Camera Footage, Sergeant Stacks, DC_2021-cv-00806-00015324, at 21:30:48–21:30:56; Ex. 55, Remick Dep. at 58:19–22.

159.    Plaintiff Remick did not see any MPD officer deploy pepper spray, but they allege that they felt the effects of pepper spray in their lungs and eyes.  Ex. 55, Remick Dep. at 59:7–9, 61:17–20.

160.    Plaintiff Remick did not seek any medical attention for the effects of pepper spray.  Ex. 55, Remick Dep. at 102:21–121:7.

161.    MPD trains its officers on the use of pepper spray during police responses to large crowds and mass demonstrations.  Ex. 82, Edwards Dep. at 21:20–23:7; 138:7–11; Ex. 87, Civil Disturbance Unit (CDU) recertification on Grenadier Training, DC_2021-cv-00806-00017369.

162.    MPD policy authorizes officers to use pepper spray against individuals in a crowd who are resisting or not complying with orders to move back.  Ex. 82, Edwards Dep. at 129:11–130:4, 132:2–134:10.

163.    MPD policy authorizes officers to use pepper spray to prevent the ongoing commission of a crime, including in the context of a large crowd or mass demonstration.  Ex. 10, Glover Dep. at 43:22–45:17; 53:14–62:18.

164.    In June 2020, MPD policy concerning the use of force, including in the context of mass demonstrations, stated: "MPD members shall use the minimum amount of force that the objectively reasonable officer would use in light of the circumstances to effectively bring an incident or person under control, while protecting the lives of the member or others."  Ex. 97, GO-RAR-901.07 (Use of Force), DC_2021-cv-00806-00003952, at 3953; Ex. 98, SOP-16-01 (Handling First Amendment Assemblies and Mass Demonstrations), DC_2021-cv-00806-00003683, at 3750–3759.

165.    MPD policy concerning the use of force does not dictate that force be used in any given situation.  Ex. 97, GO-RAR-901.07 (Use of Force), DC_2021-cv-00806-00003952, at 3952–3968; Ex. 98, SOP-16-01 (Handling First Amendment Assemblies and Mass Demonstrations), DC_2021-cv-00806-00003683, at 3748–3759.

166.    There were four deployments of pepper spray during the police line's advance from 15th Street toward 14th Street, three by Lieutenant Horos and one by Officer Crisman.  Ex. 43, Horos Dep. at 247:5–8; Ex. 79, Swann Street Overhead Cell Phone Footage, PL_0000325, at 0:00–0:50; Ex. 4, IAD Report at 14–18.

167.    As MPD Officers moved east from 15th Street, one curfew violator climbed on top of a parked car.  He began on the roof, briefly moved to standing on the trunk, and then

resumed his position on the roof of the car.  He was not complying with the officers' orders to move back.  Ex. 88, Body-Worn Camera Footage, Officer Buchanan, DC_2021-cv-00806-00014244, at 21:29:30–21:30:07 EDT; Ex. 89, Body-Worn Camera Footage, Officer Coleman, DC_2021-cv-00806-00014245, at 1:29:42–1:30:11 GMT (21:29:42–21:30:11 EDT); Ex. 43, Horos Dep. at 219:3–22; Ex. 4, IAD Report at 15.

168.    As MPD officers moved past the car the curfew violator was standing on, the curfew violator initiated contact with an officer's shield, after which Lieutenant Horos deployed an approximately one second burst of pepper spray at the individual, which caused the curfew violator to get off of the car and move back.  Ex. 43, Horos Dep. at 218:19–219:22, 252:1–17; Ex. 88, Body-Worn Camera Footage, Officer Buchanan, DC_2021-cv-00806-00014244, at 21:29:30–21:30:07 EDT; Ex. 89, Body-Worn Camera Footage, Officer Coleman, DC_2021-cv-00806-00014245, at 1:29:42–1:30:11 GMT (21:29:42–21:30:11 EDT); Ex. 4, IAD Report at 15.

169.    Regarding the individual on the car, Lieutenant Horos testified: "He wasn't following commands.  He wasn't moving back.  He was in an elevate[d] position. I didn't know what was . . . in his hand at the time.  And we were taking all sorts of projectiles at the police line, and there's also individuals who were refusing to move and were actively assaulting the officers in the front of the line.  And if we were to push past him, and let him remain on the vehicle, he could have, obviously, injured the officers because he would have been behind the police line." Ex. 43, Horos Dep. at 219:3–19.

170.    MPD officers continued to move forward and several curfew violators continued to refuse to comply with the order to move back.  Ex. 79, Swann Street Overhead Cell Phone Footage, PL_0000325, at 00:25–32.

171.    During this time, several objects were being thrown at the officers. One object struck an officer's shield. That officer was standing in front of Lieutenant Horos. Ex. 79, Swann Street Overhead Cell Phone Footage, PL_0000325, at 0:25–0:31.

172.    In response, Lieutenant Horos deployed an approximately one second burst of pepper spray toward the individual who was throwing the objects. Ex. 79, Swann Street Overhead Cell Phone Footage, PL_0000325, at 0:27–0:31; Ex. 43, Horos Dep. at 221:16–222:5.

173.    Shortly thereafter, an individual rushed toward an officer with his fists clenched while yelling loudly. That individual made contact with an officer's shield. Ex. 4, IAD Report at 15; Ex. 91, Body-Worn Camera Footage, Officer Niewenhous III, DC_2021-cv-00806-00014243, at 21:29:33–21:30:41 EDT; Ex. 92, Body-Worn Camera Footage, Officer Rosenthal, DC_2021-cv-00806-00018240, at 21:29:31–21:30:41 EDT; Ex. 90, Body-Worn Camera Footage, Officer Buchanan, DC_2021-cv-00806-00014244, at 21:30:07–21:30:44 EDT.

174.    In response, Lieutenant Horos deployed a short burst of pepper spray at that individual. Ex. 4, IAD Report at 15; Ex. 91, Body-Worn Camera Footage, Officer Niewenhous III, DC_2021-cv-00806-00014243, at 21:29:33–21:30:41 EDT; Ex. 92, Body-Worn Camera Footage, Officer Rosenthal, DC_2021-cv-00806-00018240, at 21:29:31–21:30:41; Ex. 90, Body-Worn Camera Footage, Officer Buchanan, DC_2021-cv-00806-00014244, at 21:30:07–21:30:44.

175.    After Lieutenant Horos deployed the pepper spray, the individual moved away from the police line. Ex. 4, IAD Report at 15; Ex. 90, Body-Worn Camera Footage, Officer Buchanan, DC_2021-cv-00806-00014244, at 21:30:07–21:30:44 EDT; Ex. 91, Body-Worn Camera Footage, Officer Niewenhous III, DC_2021-cv-00806-00014243, at 21:29:33–21:30:41 EDT; Ex. 92, Body-Worn Camera Footage, Officer Rosenthal, DC_2021-cv-00806-00018240, at 21:29:31–21:30:41 EDT.

176.     Prior to the police line's advance from 15th Street, Officer Crisman heard individuals kicking doors of Swann Street residences.  Ex. 11, Crisman Dep. 190:5–19.

177.     As the police line moved forward, Officer Crisman observed individuals entering a residence.  Ex. 11, Crisman Dep. at 190:5–19, 195:19–197:1.

178.     Officer Crisman believed the individuals were entering the residence illegally.  Ex. 11, Crisman Dep. at 195:19–197:1, 199:3–20.

179.     Officer Crisman also observed individuals on the sidewalk who were moving toward the door of the residence and who he believed were also going to enter the residence.  Ex. 11, Crisman Dep. at 195:19–197:1, 199:3–20.

180.     In order to prevent the individuals on the sidewalk from entering the residence, Officer Crisman deployed a short burst of pepper spray in their direction.  Ex. 11, Crisman Dep. at 195:19–197:1, 199:3–20; Ex. 93, Body-Worn Camera Footage, Officer Niewenhous III, DC_2021-cv-00806-00014243, at 21:30:41–21:30:48 EDT.

181.     Plaintiff Goodwin testified that she was exposed to pepper spray while on Swann Street.  Ex. 53, Goodwin Dep. at 66:9–15.

182.     Plaintiff Goodwin testified that she was pepper sprayed by an MPD officer in the police line on the east end of Swann Street, near 14th Street.  Ex. 53, Goodwin Dep. at 63:10–66:17, 114:4–14, 128:9–130:4.

183.     Plaintiff Goodwin ultimately entered the basement apartment of a resident of Swann Street.  Ex. 53, Goodwin Dep. at 67:8–12, 69:5–71:4.

184.     Plaintiff Lane testified that she was pushed with an MPD shield one time while on Swann Street.  Ex. 61, Lane Dep. at 110:13–15.

185.    Plaintiff Lane testified that she was exposed to pepper spray during the police line's advance east on Swann Street.  Ex. 61, Lane Dep. at 112:1–113:3.

186.    Plaintiff Lane did not see the officer who deployed the pepper spray to which she was allegedly exposed, nor did she see the device that was used to deploy the pepper spray.  Ex. 61, Lane Dep. at 112:1–5.

187.    After allegedly being exposed to pepper spray, Plaintiff Lane entered the house of Mr. Rahul Dubey on Swann Street.  Ex. 61, Lane Dep. at 115:16–116:6.

188.    Plaintiff Lane remained in Mr. Dubey's house until 7 a.m. on June 2, 2020, and then went home.  Ex. 61, Lane Dep. at 154:1–156:8.

189.    Plaintiff Lane did not seek any medical attention for the alleged effects of pepper spray.  Ex. 61, Lane Dep. at 161:9–14.

190.    No MPD officer made physical contact with Plaintiff Lazo on Swann Street.  Ex. 60, Lazo Dep. at 123:3–19.

191.    Plaintiff Lazo testified that she was exposed to pepper spray soon after she entered the house of Mr. Rahul Dubey on Swann Street.  Ex. 60, Lazo Dep. at 127:11–128:4.

192.    Plaintiff Lazo did not personally observe any deployment of pepper spray on Swann Street.  Ex. 60, Lazo Dep. at 125:4–15.

193.    Plaintiff Lazo did not seek any medical care or treatment for the alleged effects of pepper spray.  Ex. 60, Lazo Dep. at 156:9–18.

194.    Plaintiff Troper entered the house of Mr. Rahul Dubey on Swann Street immediately after the police line formed at 15th Street and Swann Street and before the police line's advance.  Ex. 59, Troper Dep. at 117:18–118:8.

195.    Plaintiff Troper does not recall whether more than one MPD officer deployed pepper spray on Swann Street.  Ex. 59, Troper Dep. at 186:18–187:3.

196.    Plaintiff Troper testified that she was exposed to pepper spray while inside Mr. Rahul Dubey's house.  Ex. 59, Troper Dep. at 117:18–118:8.

197.    Plaintiff Troper did not see a doctor for treatment of the alleged effects of pepper spray.  Ex. 59, Troper Dep. at 15:20–16:8.

198.    Plaintiff Pearlmutter testified that he was exposed to pepper spray during the police line's advance east on Swann Street.  Ex. 58, Pearlmutter Dep. at 147:9–148:10, 254:5–17.

199.    Plaintiff Pearlmutter testified that he saw "a couple people directly be sprayed" and that he was approximately ten to fifteen feet away from the officer that deployed the pepper spray that affected him.  Ex. 58, Pearlmutter Dep. at 148:17–149:10.

200.    Plaintiff Pearlmutter did not see a doctor for treatment of the effects of pepper spray.  Ex. 58, Pearlmutter Dep. at 259:21–260:2.

201.    Plaintiff Pearlmutter did not attempt to enter any residence on Swann Street.  Ex. 58, Pearlmutter Dep. at 162:12–18.

202.    MPD has policies, practices, and procedures governing high-volume prisoner processing.  Ex. 64, Haines Dep. 17:1–3, 19:15–20:3, 26:1–27:15, 29:9–10, 32:12–33:2.

203.    MPD treats high-volume arrests differently from normal arrests in terms of transportation and processing because of their high-volume nature.  Ex. 64, Haines Dep. 27:12–29:19.

204.    When MPD anticipates making high-volume arrests at a single location, it activates its High-Volume Prisoner Processing procedures, which involve preparing the high-

volume prisoner processing center to receive and handle high volumes of persons receiving

citations or being taken into custody, transporting arrestees from the site of arrest to the prisoner

processing center, and processing arrestees.  Ex. 64, Haines Dep. 17:5–7, 26:18–27:3, 31:11–

34:4.

205.    In response to violence and destruction of property seen downtown in the District

the previous nights, MPD issued a teletype for a full departmental activation for June 1, 2020,

including activation of the High-Volume Prisoner Processing center.  Ex. 94, TT 06-001-20,

DC_2021-cv-00806-00010021–10024; Ex. 2, Carroll Dep. 62:1–63:13; *see also* Ex. 64, Haines

Dep. 32:12–16.

206.    MPD's Narcotics and Special Investigations Division (NSID) was responsible for

setting up and assisting with the high-volume prisoner processing center.  Ex. 64, Haines Dep. at

14:11–15:11.

207.    As Commander of NSID on June 1, 2020, Commander Haines was responsible

for coordinating his units to handle the transportation of arrestees from the site of Swann Street's

high-volume arrest to the prisoner processing center at the Metropolitan Police Academy and the

arrestees' processing at the center.  Ex. 64, Haines Dep. at 26:3–27:21.

208.    The Metropolitan Police Academy is located at 4665 Blue Plains Drive, SW,

Washington, DC, 20032.  Ex. 64, Haines Dep. 35:19–20

209.    Processing for high volume arrests consists of unloading arrestees from transport

vehicles, filling initial "256s"—MPD's standard booking form—grouping arrestees with their

arresting officers, conducting a formal search of the arrestees, processing arrestees through

several stations which conduct background and criminal checks, performing electronic

fingerprinting, placing arrestees in a holding room, and ultimately providing the arrestees with their citation paperwork.  Ex. 64, Haines Dep. at 117:13–118:6, 142:2–143:5.

210.    During processing, arrestees had access to bathrooms upon request.  Ex. 64, Haines Dep. at 145:5–52:11; Ex. 54, Surio Dep. at 220:13–221:13; Ex. 58, Pearlmutter Dep. at 239:4–40:22; Ex. 95, Females—Arrestees Food and Rest Room Log, DC_2021-cv-00806-00021193–21199; Ex. 96, Males—Arrestees Food and Rest Room Log, DC_2021-cv-00806-00021175–21192.

211.    Once in a holding room, food and water were available for arrestees.  Ex. 64, Haines Dep. at 141:1–9, 143:20–45:11; Ex. 58, Pearlmutter Dep. at 234:20–35:6:, 239; Ex. 95, Females—Arrestees Food and Rest Room Log, DC_2021-cv-00806-00021193–21199; Ex. 96, Males—Arrestees Food and Rest Room Log, DC_2021-cv-00806-00021175–21192.

212.    Any time someone is arrested by MPD officers, they are placed in restraints for officer and arrestee safety unless there is a physical reason that restraints cannot be reasonably applied.  Ex. 64, Haines Dep. at 96:3–13, 155:9–13.

213.    For high volume arrests, MPD uses double loop flex cuffs to restrain arrestees. Ex. 64, Haines Dep. at 95:13–18, 103:1–12.

214.    MPD officers follow a two-finger test when assessing how tight to apply flex cuffs as well as when inspecting cuffs after arrestees complain about their tightness: MPD officers should be able to just fit 2 fingers between the cuff and the arrestee's wrist.  Ex. 64, Haines Dep. at 103:8–04:13.

215.    Plaintiff Pearlmutter did not request to have his cuffs adjusted prior to his arrival at the high-volume prisoner processing center.  Ex. 58, Pearlmutter Dep. at 192:3–9.

216.     After arriving at the high-volume prisoner processing center, Plaintiff Pearlmutter requested that his cuffs be adjusted and moved from behind him to in front of him because of discomfort to his shoulder and back.  Ex. 58, Pearlmutter Dep. at 209:3–8.

217.     MPD officers eventually adjusted Plaintiff Pearlmutter's cuffs as requested.  Ex. 58, Pearlmutter Dep. at 209:3–10:16.

218.     In May and June 2020, Jeffrey Carroll was Assistant Chief of the Homeland Security Bureau.  Ex. 2, Carroll Dep. at 11:11–12:17.

219.     Most individuals who were informed by Lt. Mejia after 7 p.m. on June 1 to comply with the curfew did so without incident.  Ex. 44, Mejia Dep. at 151:22–153:7.

220.     As a large group of individuals was marching north on 14th Street, NW on June 1 after 7 p.m., Commander Glover was concerned that the group was heading to loot the Target at 3100 14th Street, NW.  Ex. 4, IAD Report at 3.

221.     Individuals who marched north and then south on 14th Street on June 1 after 7 p.m. were not a cohesive group.  Individuals joined and left the group before the group arrived on Swann Street.  Ex. 59, Troper Dep. at 173:14–177:1.

222.     Because of concern that the large group of individuals were heading north on 14th Street to loot the Target at 3100 14th Street, NW, Commander Glover instructed officers to deny the large group access to areas farther north on 14th Street, NW, including Target.  Ex. 10, Glover Dep. at 158:5–161:17.

223.     The decision to arrest individuals on Swann Street was made before police lines were formed on 14th and 15th Streets, NW.  Ex. 43, Horos Dep. at 185:5–

224.     Commander Glover's initial preference was to conduct the encirclement on 14th or 15th Streets, but because the group was constantly moving, that was not possible.  Ex. 10,

Glover Deposition at 161–83; Ex. 41, Radio Run at 2:08:25–2:30:27; Ex. 42, Radio Run Tr. at 149–76.

225.    Residents of Swann Street heard MPD officers announcing the curfew.  Ex. 4, IAD Report at 25, 27.

226.    Approximately 200 individuals were arrested on Swann Street for violating the June 1 Curfew.  Ex. 45, Arrest Query – Curfew_Public Narratives.xlsx, DC_2021-cv-00806-00016492.

227.    After Officer Crisman's deployment of pepper spray, MPD officers learned that the owner or tenant of the residence outside of which the deployment took place (Rahul Dubey) had allowed the curfew violators to enter.  Ex. 4, IAD report at 27–28.

228.    After Officer Crisman's deployment of pepper spray, there were no additional uses of force and the individuals who remained on the street were taken into custody without incident.  Ex. 4, IAD report at 27–28.

229.    There is no evidence that Chief Newsham was present around the area of Swann Street on June 1 after 7 p.m.  Ex. 12, Newsham Dep. at 114:18-115:21.

230.    To Commander Glover's best recollection, the last known similar curfew to the June 1 Curfew Order was in the aftermath of September 11, 2001.  Ex. 10, Glover Dep. at 218:8-20.

231.    Although Plaintiff Surio claimed she sustained injuries from her interactions with MPD officers on Swann Street, most of her bruises were from injuries sustained on May 31, 2020.  Ex. 103, Surio Texts, PL_0001422, at 6.

Date: July 29, 2024.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
GREGORY KETCHAM-COLWILL [1632660]
AMANDA C. PESCOVITZ [1735780]
MARCUS D. IRELAND [90005124]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 805-7512
Email: richard.sobiecki@dc.gov

*Counsel for Defendants*