# EXHIBIT 36

```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA

                         + + + + +
```

|  |  |
|---|---|
| IN THE MATTER OF: | : |
| PAMELA GOODWIN, et al., | : |
| Plaintiffs | : |
| v. | : Civil Action No. |
|  | : 1:21-cv-00806 (BAH) |
| DISTRICT OF COLUMBIA, et al., | : |
| Defendants | : |

Monday,
April 29, 2024

Via Videoconference

DEPOSITION OF:

SCOTT MOURTGOS

called for examination by Counsel for the Defendants, pursuant to Notice of Deposition, when were present on behalf of the respective parties:

```
     APPEARANCES:

     On Behalf of Plaintiffs:

     REBECCA LIVENGOOD, ESQ.
     ELLORA ISRANI, ESQ.
     NICHOLAS ABBOTT, ESQ.
     Relman Colfax, PLLC
     1225 19th Street, N.W.
     Suite 600
     Washington, D.C. 20036
     202-728-1888
     rlivengood@relmanlaw.com
     nabbott@relmanlaw.com

     On Behalf of Defendants:

     RICHARD SOBIECKI, ESQ.
     MARCUS ISRAEL, ESQ.
     AMANDA PESCOVITZ, ESQ.
     GREG KETCHAM-COLWILL, ESQ.
     Assistant Attorney General
     Office of the Attorney General for the District
     of Columbia
     400 Sixth Street, N.W.
     Washington, D.C. 20001
     marcus.ireland@dc.gov
```

CONTENTS

```
WITNESS              DIRECT  CROSS  REDIRECT  RECROSS

Scott M. Mourtgos      6     289     306
```

EXHIBIT NO.                                           PAGE

1      Witness's Expert Report of . . . . . . . . . 9
       Scott M. Mourtgos, Ph.D.
2      Retention Agreement, Bates . . . . . . . . .16
       stamped PL0001702
3      Invoice dated 2-1-2024 . . . . . . . . . . .17
4      Invoice, Bates stamped PL0001677 . . . . . .17
5      Screenshot DC_2021-cv-00806. . . . . . . . 181
       -00018227
6      Body-worn camera footage . . . . . . . . . 182
       of Scott Schmoeller
7      IAD Report . . . . . . . . . . . . . . . . 208
8      Cell phone footage, . . . . . . . . . . . .226
       Bates PL_0000325
9      Body-worn camera footage of . . . . . . . .229
       Officer Jeffrey Buchanan,
       Bates stamped 14244
10     Body-worn camera footage of. . . . . . . . 229
       Anthony Coleman, stamped 14245

```
 1                 So, if that indeed were the case, I
 2    definitely would change my report regarding that
 3    particular aspect of it.
 4         Q    Anything else?
 5         A    Not that I can think of off the top of
 6    my head.
 7         Q    Based on our discussion today, is
 8    there any material that you would like to review,
 9    that you haven't already reviewed?
10         A    No.
11         Q    Thank you.  I'll wait to see if
12    Ms. Livengood has any questions, otherwise.
13              MS. LIVENGOOD:  Yeah, I do have a few
14    questions.
15              MR. SOBIECKI:  Sure.
16              MS. LIVENGOOD:  All right.
17                   CROSS-EXAMINATION
18              BY MS. LIVENGOOD:
19         Q    Thank you, Dr. Mourtgos.  I know it's
20    been a long day.  So, there was a lot of
21    discussion about dispersal warnings between
22    7:00 p.m. and 8:45 p.m.  Do you recall that?
```

1      A    I do.

2      Q    Would learning that dispersal warnings
3 had been given to people who were marching up
4 14th Street, who ultimately ended on Swann Street
5 during the period of that march on 14th Street,
6 change your opinion of the need for a dispersal
7 warning after the crowd was encircled on Swann
8 Street?

9      A    No, it would not.  As it's been
10 established today, at least part of the crowd --
11 at least some of the people that were in that
12 crowd along the way were subject to some sort of
13 dispersal order.

14           However, nothing has the efficacy of
15 giving a dispersal order over an LRAD or some
16 other amplification system, at the moment the
17 enforcement activity is actually going to be
18 engaged in, or just prior to it, especially after
19 a tactic such as encirclement.

20           You're certainly are probably or
21 likely to get much more serious attention to the
22 dispersal order.  And frankly, it's an

1     opportunity, again, to deescalate the situation,
2     and perhaps get some people to go home, as was
3     practiced with other groups, at least over the
4     radio.
5              And I believe you heard Lieutenant
6     Glover talking about that as an option as well in
7     some circumstances.  But it was not done in this
8     case.
9         Q    And does the fact that some plaintiffs
10    received dispersal warnings before they were on
11    Swann Street change that opinion at all?
12             MR. SOBIECKI:  Object to form.
13             THE WITNESS:  No.  Because, again,
14    it's very, very difficult, especially in these
15    large group dynamics, to know who was present for
16    those dispersal orders, and who wasn't.
17             And so, again, before conducting a
18    mass arrest, it's generally accepted practice to
19    give dispersal orders to that particular group to
20    make sure those people in it are aware of what's
21    going to happen.
22             BY MS. LIVENGOOD:

1    Q    You mentioned at the very beginning of
2 the deposition, that you didn't believe that any
3 court had relied on an opinion you've given at
4 summary judgment.  Do you recall that?
5    A    Yes.
6    Q    Do you know whether or not any court
7 has relied on an opinion you've given at summary
8 judgment?
9    A    I don't know.  When these reports are
10 done and I do my depositions, if it doesn't go to
11 trial, that's typically the end of contact that I
12 have regarding these cases.  So, something that's
13 given for summary judgment, perhaps they did.  I
14 just don't know about it.
15    Q    You were shown a number of videos of
16 Swann Street today.  Do you recall that?
17    A    Yes.
18    Q    Did anything that you saw in those
19 videos change any of the conclusions in your
20 report?
21          MR. SOBIECKI:  Object to form.
22          THE WITNESS:  No.