# EXHIBIT 106

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

PAMELA GOODWIN, et al.,        :

   Plaintiffs,                 :

   v.                          :  Civil Action No. 1:21-cv-00806-BAH

DISTRICT OF COLUMBIA, et al.,  :

   Defendants.                 :

_____

Tuesday, January 16, 2024

Held Remotely

     Deposition of JAMES CRISMAN, a witness herein, called for examination by counsel for the Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by Barbara J. Moore, a Notary Public in and for the District of Columbia, taken at the offices of RELMAN COLFAX, PLLC, 1225 19th Street, N.W., Suite 600, Washington, D.C., commencing at 10:00 a.m., and the proceedings being taken down by Stenotype by BARBARA MOORE, CRR, RMR, and transcribed under her direction.

```
                                                                  2
 1    APPEARANCES:

 2

 3            On Behalf of the Plaintiffs:

 4                NICHOLAS ABBOTT, ESQ.

 5                REBECCA LIVENGOOD, ESQ.

 6                RELMAN COLFAX, PLLC

 7                1225 19th Street, N.W., Suite 600

 8                Washington, D.C.  20036

 9                nabbott@relmanlaw.com

10                rlivengood@relmanlaw.com

11

12            On behalf of the Defendants:

13                RICHARD SOBIECKI, ESQ.

14                OFFICE OF THE ATTORNEY GENERAL

15                400 6th Street, N.W.

16                Washington, D.C.  20001

17                richard.sobiecki@dc.gov

18

19

20

21

22
```

3

```
 1                    TABLE OF CONTENTS

 2   WITNESS                                                 PAGE

 3   JAMES ANTHONY CRISMAN

 4   By Attorney Abbott                                        4

 5


 6                        EXHIBITS

 7   EXHIBIT         DESCRIPTION                             PAGE

 8
     Exhibit 54      Memorandum                                31
 9
     Exhibit 55      Memorandum                                32
10
     Exhibit 56      Preliminary Report Form -- Use            39
11                   Of Force Incident

12   Exhibit 57      Condensed Investigative Report            48
                     Form
13
     Exhibit 58      Condensed Investigative Report            53
14                   Form

15   Exhibit 59      Training History Report                   89

16   Exhibit 60      PowerPoint                               139

17   Exhibit 61      Standard Operating Procedures            158

18   Exhibit 62      Standard Operating Procedures            165

19   Exhibit 63      Email                                    201

20   Exhibit 64      Audiotape                                206

21   Exhibit 65      Video                                    212

22   Exhibit 66      Condensed Investigative Report           214
```

1                lieutenant could deploy and give
2                permission to use.
3        BY ATTORNEY ABBOTT:
4            Q.    Any other situations?
5            **A.    I'm sure there is.  I mean, based**
6    **upon you have to -- the circumstances could dictate**
7    **why it would be used.**
8            Q.    For the -- one of the reasons that
9    you could use OC spray would be to prevent escape
10   from an arrest.  And that applies to misdemeanor
11   arrests?
12           **A.    Yes.**
13           Q.    For the justification that an
14   officer or civilian is in harm's way, what do you
15   mean by "harm's way"?
16           **A.    Well, attempting to make the arrest**
17   **of that person, it's possible to take another**
18   **person, push him down, get them out of the way.**
19   **It's the use of force that you could utilize to**
20   **make an arrest.**
21           Q.    Is there any threshold for the level
22   of danger that must be present in order for the use

1    of that force to be justified?
2                ATTORNEY SOBIECKI:  Object to
3         form.
4                THE WITNESS:  You have to --
5    BY ATTORNEY ABBOTT:
6         Q.    I can clarify.
7         What level of danger does there have to be
8    for OC spray to be justified?
9                ATTORNEY SOBIECKI:  Object to
10        form.
11               THE WITNESS:  That's up to the
12        officer.  He has to justify his actions
13        why he had to use pepper spray.
14   BY ATTORNEY ABBOTT:
15        Q.    If a water bottle was thrown at an
16   officer, is that a sufficient amount of danger to
17   justify the use of OC spray?
18               ATTORNEY SOBIECKI:  Object to
19        form.  Calls for speculation.
20               THE WITNESS:  In my line of work,
21        yes.  Because I don't know what's inside
22        that water bottle.  Throughout the 2020

1              riots, multiple times they stuck chlorine
2              in there, which looks like water.  It's
3              not normal behavior to throw things at
4              people.
5     BY ATTORNEY ABBOTT:
6         Q.    Did you experience that on June 1,
7     2020?
8         **A.    Maybe not that day, but that**
9     **weekend, yes.**
10        Q.    Prior to June 1, 2020?
11        **A.    And after.**
12        Q.    And is it your understanding -- did
13    you document that at all?
14        **A.    Yes.**
15        Q.    In what form?
16        **A.    Sergeant Thau went to the hospital,**
17    **I believe it's somewhere in that record, but they**
18    **threw chlorine in his eyes.**
19        Q.    Do you know who threw chlorine?
20        **A.    I have no idea.  Just people in the**
21    **crowd.**
22        Q.    And do you recall what date that

1  incident happened?

2       A.    **That was that week and prior events**
3  **that we've gone to where you could smell it in the**
4  **air.**

5       Q.    And Sergeant Thau?

6       A.    **Yes.**

7       Q.    What's his full name?

8       A.    **Daniel Thau.**

9       Q.    And do you have any reason to
10 believe that the protesters on June 1, 2020, had
11 chlorine?

12      A.    **Yes.**

13      Q.    And what was that based on?

14      A.    **Based upon once you start throwing**
15 **water bottles, I treat a heavy water bottle as a**
16 **hazardous item, that they could hurt somebody.**

17      Q.    Is that how you think of water
18 bottles through the present?

19      A.    **Yes, I always let people know that**
20 **water bottles can contain some form of chemical**
21 **inside of it that can ultimately -- short-term**
22 **blindness.**

132

```
1        Q.    And any other instances aside from
2   one involving Sergeant Thau in which you were
3   familiar with chlorine being used in that way?
4        A.    Multiple times throughout 2020.
5        Q.    Anything else?  Did you witness it
6   being used?
7        A.    You could smell it, yes.  You could
8   smell it, absolutely.  You smell chlorine.  It's a
9   very distinct odor.
10       Q.    And you said you don't remember the
11  date of that Sergeant Thau incident; is that right?
12       A.    No.  I think it was the night prior.
13  They are all running, it's all the same.
14       Q.    The night prior to June 1?
15       A.    Yes.
16       Q.    And do you recall any instances of
17  chlorine being used on June 1?
18       A.    For that day, I think earlier in the
19  day, around noontime, I believe.  I think.  Because
20  all those days, they're all the same there.
21       Q.    Do you recall where in the District
22  that happened?
```

```
 1          A.     Downtown, somewhere downtown.
 2          Q.     Do you recall smelling chlorine on
 3   June 1?
 4          A.     I can't recall.  Some time during
 5   that weekend.
 6          Q.     Do you recall smelling chlorine when
 7   you were in the vicinity of Swann Street on that
 8   day?
 9          A.     Not that I recall that day, no.
10                 ATTORNEY ABBOTT:  So we've been
11            going for -- we can go off the record.
12                       (Discussion held off the
13                 record.)
14                       (Recess taken from 12:33
15                 p.m. to 1:17 p.m.)
16      BY ATTORNEY ABBOTT:
17          Q.     And before the break we were talking
18   about the permissible justifications for the use of
19   OC spray.  Are you permitted to use OC spray to
20   distract the people?
21                 ATTORNEY SOBIECKI:  Object to
22            form.
```

                                                                134

1                THE WITNESS:  I don't know what
2         you mean by that.  It's a word that we
3         use to distract, disorient.  What do you
4         mean?
5    BY ATTORNEY ABBOTT:
6         Q.    In what context does MPD use the
7    word?
8         **A.    So if somebody was doing something**
9    **where pepper spray was allowed to be utilized, the**
10   **term that you would use is you're trying to**
11   **distract them from stopping what they were doing.**
12   **So if they were breaking a window and you're**
13   **utilizing pepper spray to stop them, you're**
14   **distracting them from doing what they were doing.**
15        **So when you say "distract," it's a term**
16   **that we -- actually, it's like a buzz term.  So --**
17   **but the other distract is, hey, look, over here**
18   **while this is happening.  No.  No.**
19        Q.    Are there -- what are the limits for
20   the authorization of OC spray?
21               ATTORNEY SOBIECKI:  Object.
22               THE WITNESS:  That's more of a