UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAMELA GOODWIN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> Defendants. | Civil Action No. 1:21-cv-00806-BAH |

**DEFENDANTS' SUR-SUR-REPLY IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 1

    I.       Plaintiffs' New Claims Are Not Based on Alternative Legal Theories Alleged in the Complaint. ........................................................................... 1

    II.      Defendants Did Not Raise Any New Arguments Concerning Plaintiffs' First Amendment Claims, and the Arguments Plaintiffs Offer in Sur-Reply Are Meritless. ............................................................................ 2

        A.      Plaintiffs Ignore Undisputed Facts When Analyzing Whether They Were Similarly-Situated to Individuals Who Were Not Arrested. ............. 3

        B.      Cmdr. Glover's Decision To Arrest Plaintiffs Was Not Caused by Plaintiffs' Protest Activity. ........................................................................ 6

        C.      Plaintiffs Have Still Failed To Show That Commander Glover Is Not Entitled to Qualified Immunity on Their First Amendment Claims. ......................................................................................................... 7

    III.     Plaintiffs' FAAA Claim Still Fails. ........................................................................ 9

    IV.     Plaintiffs' Fourth Amendment Claims Still Fail. ................................................. 10

CONCLUSION ................................................................................................................ 10

# INTRODUCTION

Defendants did not raise any "new" arguments in their reply; they simply responded to arguments raised in Plaintiffs' opposition. For that reason, the Court need not consider Plaintiffs' sur-reply when deciding Defendants' motion. Even if the Court considers it, the sur-reply merely rehashes arguments that have already been addressed by the Parties. Defendants' motion for summary judgment should be granted.

# ARGUMENT

I. **Plaintiffs' New Claims Are Not Based on Alternative Legal Theories Alleged in the Complaint.**

As explained in Defendants' reply, Plaintiffs Surio, Pearlmutter, and Remick assert claims in their opposition that were not pled in the Second Amended Complaint. Defs.' Reply in Support of Their Mot. for Summ. J. [87] (Defs.' Reply) at 1. In response, Plaintiffs argue that they are not asserting new claims but are instead offering "alternative legal characterizations of existing claims," citing in support *Doe v. District of Columbia*, Civil Action No. 1:19-01173, 2023 WL 3558038, at *7 (D.D.C. Feb. 14, 2023). Pls.' Sur-Reply to Defs.' Mot. for Summ. J. [89] (Pls.' Sur-Reply) at 2. Plaintiffs misread *Doe*. In *Doe*, after acknowledging the well-established proposition that a plaintiff cannot add claims through a summary judgment opposition, the Court found that the legal theory in question *had been* alleged in the complaint and was not "a new substantive claim or even a new factual theory of liability." *Doe*, 2023 WL 3558038, at *7. That is not the case here. Plaintiffs are plainly relying on new factual theories of liability in support of their new claims.

As an initial matter, Plaintiffs disingenuously suggest that their new claims are a product of discovery, implying that Plaintiffs could not have alleged those claims before summary judgment. *See* Pls.' Sur-Reply at 2. Plaintiffs' Second Amended Complaint was filed at the end

of discovery and was filed for the express purpose of clarifying the legal theories associated with Plaintiffs' First Amendment claim. *See* Pls.' Mot. for Leave to Amend [66] (filed March 8, 2024). If, as Plaintiffs contend, the new claims they assert in their opposition were only revealed through discovery, then they had every opportunity—when they filed their Second Amended Complaint—to plead them then, before summary judgment. They failed to do so—indeed, they *still* have not sought leave to amend—and they cannot amend through their summary judgment briefing.

Further, Plaintiffs' new claims are not based on alternative legal theories: Their claims are based on new and different factual allegations. For example, Pearlmutter's prior claim was that Lt. Horos pepper-sprayed him. *See* Defs.' Reply at 1. That claim could not have put Officer Crisman on notice that Pearlmutter intended to assert an excessive force claim against *him*. Similarly, Remick did not allege that *any* Individual Defendant used excessive force against them. *Id*. Accordingly, Lt. Horos and Cmdr. Glover could not have been on notice that Remick intended to assert claims against them. *Id*. So too with regard to Surio's new claims against Lt. Horos and Cmdr. Glover. *Id*.

II.     **Defendants Did Not Raise Any New Arguments Concerning Plaintiffs' First Amendment Claims, and the Arguments Plaintiffs Offer in Sur-Reply Are Meritless.**

In their sur-reply, Plaintiffs rehash three issues. First, they re-argue that there is a genuine dispute of material fact as to whether they were similarly situated to individuals who were not arrested for violating the curfew. Second, they re-argue that there is a genuine dispute of material fact as to whether their protest activity caused the decision to arrest them. Third, they re-argue that Cmdr. Glover is not entitled to qualified immunity on their First Amendment claims. Plaintiffs' arguments still have no merit.

2

### A.   Plaintiffs Ignore Undisputed Facts When Analyzing Whether They Were Similarly-Situated to Individuals Who Were Not Arrested.

As Defendants explained in their motion, Plaintiffs were undisputedly part of a group of several hundred people that refused multiple orders to disperse for violating the curfew and whose members were vandalizing property and throwing objects at police officers.  Defs.' Mem. of P. and A. in Support of Defs.' Mot. for Summ. J. [83-1] (Defs.' Motion) at 15–17.  Despite those undisputed facts, Plaintiffs attempted to argue in their opposition that they were similarly situated to "other individuals who also violated the curfew but were not participants in the protests against police brutality on June 1, 2020."  Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. [84] (Pls.' Opp'n) at 10.  In support of that argument, Plaintiffs cited video of individuals standing outside after curfew who were not arrested.  *Id*. at 11–12.  In responding to the evidence cited by Plaintiffs, *i.e.*, not raising a "new" argument, Defendants pointed out that the individuals shown in the cited video were not similarly situated to Plaintiffs because they were not part of a group of several hundred people that refused multiple orders to disperse for violating the curfew and were not part of a group whose members were vandalizing property and throwing objects at police officers.  Defs.' Reply at 5–6.

Ignoring those fundamental and undisputed differences between Plaintiffs and their so-called comparators, Plaintiffs argue in their sur-reply that the only meaningful difference between themselves and their alleged comparators was that MPD did not know whether those individuals had been "participants in the protests against police brutality on June 1, 2020."  Pls.' Sur-Reply at 5.  But that is not accurate.  Defendants have already noted that some of the comparators informed MPD officers that until very recently they had been part of the same group that was being arrested on Swann Street, which clearly demonstrates that the comparators were "participants in the protests against police brutality on June 1, 2020."  Defs.' Reply at 6.

3

Ultimately, however, Plaintiffs' argument is a red herring.  They have no evidence that (1) any individuals who were protesting but who were not part of a large group that was refusing orders to disperse were arrested or (2) any individuals who were part of a large group and who were not protesting were permitted to violate the curfew without arrest.  As the Supreme Court has explained, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  No reasonable jury could find that the single individuals and small groups identified by Plaintiffs were similarly situated to a group of several hundred people who were refusing orders to disperse, especially when individuals from that larger group, *i.e.*, protestors, who did disperse were not arrested.

Next, Plaintiffs quibble with Defendants' argument, *see* Defs.' Reply at 8–9, that, from a general deterrence value standpoint, it makes sense that MPD would consider groups of several hundred people moving around the city as a cohesive whole—and whose members were spray painting property,[1] throwing objects at police, and refusing orders to disperse—to be a higher priority when enforcing the curfew than Plaintiffs' identified comparators, who consisted of, for example, two individuals eating pizza on a street corner.  Plaintiffs contend that a reasonable juror could conclude that MPD did in fact have the resources necessary to arrest every single person outside after curfew and that any claim to the contrary was pretextual.  Pls.' Sur-Reply at

---

[1] Plaintiffs repeat in their sur-reply the erroneous claim that "Cmdr. Glover specifically disclaimed spray painting as a reason for conducting arrests on the night of June 1." Pls.' Sur-Reply at 4 n.4.  As Defendants previously noted, Plaintiffs misrepresent Cmdr. Glover's actual testimony.  *See* Defs.' Responses to Pls.' Statement of Material Facts in Support of Pls.' Opp'n to Defs.' Mot. for Summ. J. [87-1] (Defs.' Resps. to Pls.' SUMF) ¶ 47.  Cmdr. Glover testified only that "spray painting alone was not the catalyst for the decision" to arrest. *Id*.  He never testified that he did not take it into consideration at all.

4

5.  Plaintiffs contend further that no MPD officer identified a lack of resources as to why their identified comparators were not arrested.  *Id*.  But that is not accurate.  Plaintiffs expressly asked Assistant Chief Carroll why the individuals they cited as comparators in their opposition were not arrested and he testified, "I would assume because of the resources that we had on the scene right there dealing with the 100 and some people that are on Swann Street." Defs.' Ex. 118, Carroll Dep. at 189:2–15.[2]

Finally, Plaintiffs appear to argue that they have established that at least 245 persons arrested for violating the June 1 curfew were similarly situated to them in that those persons were protesting, and that 26 other June 1 curfew arrestees were *not* similarly situated to them because they were suspected of committing another crime.  Pls.' Sur-Reply at 6.  Plaintiffs then assert that there were seven *other* June 1 curfew arrestees "about whom no information is known," and that those seven arrestees represent an insignificant proportion of total June 1 curfew arrests.  *Id.* There are at least two problems with Plaintiffs' presentation of this statistical evidence.  First, Plaintiffs concede that members of their group threw objects at MPD officers at various points before and after the group was encircled on Swann Street, *see* Pls.' Opp'n at 19 n.6; Pls.' Resp. to Defs.' Statement of Undisputed Material Facts in Support of Mot. for Summ. J. [84-2] ¶ 122; Pls.' Statement of Material Facts in Support of Pls.' Opp'n to Defs.' Mot. for Summ. J. [84-1] ¶ 42, which undermines their attempt to distinguish themselves from June 1 curfew arrestees who were suspected of other criminal activity, in addition to curfew violation—assault on a police officer is a crime.  *See* D.C. Code § 22-405.  Second, Plaintiffs' assertion that "no information is

---

[2]    Cmdr. Glover also discussed a lack of resources on June 1.  When discussing how the encirclement was conducted, he testified that "we were out of resources at that moment in time, so I had to use my building features and terrain features to the best I could to make sure that we were still accomplishing what we wanted to accomplish." Defs.' Ex. 10, Glover Dep. at 224:3–22.

5

known about" seven other June 1 curfew arrestees is not accurate. For each of those arrestees, Defendants produced either the arrest report or body-worn camera video showing MPD officers making the arrest. *See* Defs.' Resps. to Pls.' SUMF ¶¶ 159–62. Those materials demonstrate that the only criminal activity of which the arrestees were suspected was curfew violation. *Id.* Plaintiffs offer no support for their implicit contention that an arrest report must specifically disclaim suspicion of other criminal activity in order to support an inference that the arrestee was suspected only of the charged offense (here, curfew violation).

B. **Cmdr. Glover's Decision To Arrest Plaintiffs Was Not Caused by Plaintiffs' Protest Activity.**

As explained previously, Plaintiffs' retaliation claim fails at step one because they cannot show that similarly situated individuals were treated differently. Defs.' Motion at 16–17; Defs.' Reply at 4–9. Even assuming Plaintiffs could survive that hurdle, they would still need to show that their First Amendment activity caused their arrests. *Id*.

In their opposition, Plaintiffs argued that their protest activity—and not their violation of the curfew, their refusal to disperse, and their voluntary association with individuals who were vandalizing property and throwing objects at police officers—caused their arrests. Pls.' Opp'n at 16–18. The central point in support of that argument was their claim that Cmdr. Glover decided to arrest the group prior to a police car being lit on fire, but then cited the burning car as a reason for his decision to arrest. *Id*. Under Plaintiffs' theory, the decision to encircle was the decision to arrest. *Id*. In responding to that claim, *i.e.*, not raising a "new" argument, Defendants demonstrated that Plaintiffs mischaracterized both the timing of events and Cmdr. Glover's testimony regarding when he made a final decision to arrest. Defs.' Reply at 10–13. Taking the latter first, Cmdr. Glover's testimony is clear that his decision to encircle and his decision to arrest were separate decisions. *Id*. Immediately before and after the testimony quoted by

6

Plaintiffs in their sur-reply, Cmdr. Glover explains that he had not made a final decision to arrest the group after deciding to encircle it but that he was moving in that direction. Pls.' Ex. 12, Glover Dep. 164:2–165:13. And, as Plaintiffs do not dispute, the fact that a police cruiser had been damaged was broadcast momentarily after Cmdr. Glover made the decision to encircle and well before the encirclement was complete. *See* Defs.' Reply at 11.

### C.   **Plaintiffs Have Still Failed To Show That Commander Glover Is Not Entitled to Qualified Immunity on Their First Amendment Claims.**

With regard to whether Cmdr. Glover is entitled to qualified immunity on Plaintiffs' retaliation claim, Plaintiffs err in describing the relevant analysis. First, Plaintiffs misstate the standard for determining whether a right is clearly established. Pls.' Sur-Reply at 8. Plaintiffs argue that "qualified immunity concerns what *conduct* is prohibited, not which standard the Court will apply to evaluate that conduct." *Id*. (emphasis in original). Plaintiffs then juxtapose two different quotations from *Saucier v. Katz*, 533 U.S. 194, 202–03 (2001), to argue that the lack of a "formulation of the controlling standard" does not entitle an officer to qualified immunity. When that quoted material is read in context, it does not support Plaintiffs' argument that the applicable standard is irrelevant and only the conduct matters. In other words, while it is true that an "officer would not be entitled to qualified immunity based simply on the argument that courts had not agreed on one verbal formulation of the controlling standard," *id*. at 202–03, that is different from Plaintiffs' claim that the qualified immunity analysis does not implicate the controlling standard. *Saucier* makes that clear. *Saucier* is plainly not focused only on an officer's conduct to the exclusion of any consideration of the relevant legal standard. 533 U.S. at 201–02 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

While Plaintiffs cite *Hopper v. Plummer*, 887 F.3d 744, 755–56 (6th Cir. 2018) and

7

*Sandoval v. County of Sand Diego*, 985 F.3d 657, 676 (9th Cir. 2021), *see* Pls.' Sur-Reply at 8–9, two out-of-circuit cases that have no precedential value, those cases are inapplicable because they were addressing a different situation than the one present here.  For example, in *Hopper*, which involved a claim of excessive force, the Sixth Circuit noted that it had previously explained that "creating asphyxiating conditions by putting substantial or significant pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable excessive force," such that "the prohibition against placing weight on [plaintiff's] body after he was handcuffed was clearly established in the Sixth Circuit as of May 2012." *Hopper*, 887 F.3d at 754 (citations omitted).  The Sixth Circuit then also explained that because it was already established that the *specific* conduct in question was unconstitutional it did not matter that the label applied to the relevant standard may have changed over time.  *Id*. at 754–55. If anything, *Hopper* undermines Plaintiffs' argument because it highlights that Plaintiffs have failed to identify a factually analogous case to meet their burden.

  Here, Plaintiffs have not identified any case law addressing the specific conduct at issue. In other words, Plaintiffs have identified no authority placing an officer on notice that, when enforcing a curfew that was implemented in response to a public health emergency and widespread rioting, it was unlawful to enforce the curfew differently against (1) groups of several hundred people who were refusing orders to disperse, vandalizing property, and throwing objects at police officers and (2) single individuals and small groups who were not disobeying orders, who were not vandalizing property, and who were not throwing objects at police officers.

  Plaintiffs' arguments against qualified immunity fare no better in the context of selective enforcement.  In explaining the contours of a First Amendment selective enforcement claim, the D.C. Circuit stated that "[a] First Amendment challenge to speech-infringing enforcement, as

8

with speech-infringing regulation, requires no allegation of bad motive." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1145 (D.C. Cir. 2023). Such a claim may render the government liable even for "unintended" abridgments of free speech rights that "may inevitably follow from varied forms of governmental action." *Id.* (quoting *NAACP v. Button*, 371 U.S. 415, 439 (1963)). What "conduct," then, is clearly prohibited by the law of selective enforcement? How would a law enforcement officer without any "bad motive" know that he is about to engage in the "unintended" abridgment of speech?

Indeed, *Frederick Douglass* strongly suggests that selective enforcement cannot be asserted against an individual officer. In explaining "the reality that selective enforcement claims will often be difficult to establish," the D.C. Circuit noted that "liability under section 1983 requires identifying an unconstitutional government policy or practice," which would "allow courts to review" such claims "without second-guessing decisions based on prosecutorial discretion." *Id.* Plaintiffs' observation that the Circuit in *Frederick Douglass* "did not dismiss the case on the ground of qualified immunity" is thus a red herring. *See* Pls.' Sur-Reply at 9. Qualified immunity was not at issue because the District was the only defendant. Similarly, the cases the Circuit cited as "recogniz[ing] the validity of a First Amendment selective enforcement claim without substantial elaboration" do not mention qualified immunity. *Frederick Douglass Found.*, 82 F.4th at 1144 (first citing *Zukerman v. USPS*, 961 F.3d 431, 436 (D.C. Cir. 2020), and then citing *Mahoney v. Babbitt*, 105 F.3d 1452, 1454 (D.C. Cir. 1997)).

### III.     Plaintiffs' FAAA Claim Still Fails.

Plaintiffs' continued attempts to maintain their FAAA claim only serve to further illustrate the futility of that effort. First, as to the Individual Defendants, Plaintiffs again cite *Night & Day Management, LLC v. Butler*, 101 A.3d 1033 (D.C. 2014, Pls.' Sur-Reply at 11, but that case has nothing to do with when employees are held individually liable for their conduct.

9

*Butler* was a lawsuit against the owner of a nightclub and had nothing to do with whether the employees of the nightclub could be held liable. *Butler*, 101 A.3d at 1039–41.  Second, as to the District, without citing any support, Plaintiffs claim that the requirements of the FAAA trump the power of the Mayor to take any action that is inconsistent with FAAA requirements, including during a public health emergency.  Pls.' Sur-Reply at 11–12.  That claim is absurd and unreconcilable with *Tinius v. District of Columbia*, 77 F.4th 691 (D.C. Cir. 2023).

IV.   **Plaintiffs' Fourth Amendment Claims Still Fail.**

Plaintiffs' Sur-Reply objects to Defendants' accurate description of BWC footage that disproves their Fourth Amendment excessive force claims and insists that Plaintiffs have raised triable issues of fact.  *See* Pls.' Sur-Reply at 12–14.  Specifically, Plaintiffs argue that their interpretation of certain BWC videos creates a genuine issue of material fact as to whether Plaintiffs Remick and Surio were in fact complying with officers' orders to "move back" when officers made contact with them.  *See id.* at 13.  Similarly, Plaintiffs argue that their interpretation of certain BWC videos and their uncorroborated testimony should be enough to show that Plaintiffs Remick, Surio, Lane, Lazo, and Troper felt the effects of either Lt. Horos's or Officer Crisman's deployment of pepper spray despite multiple videos of each deployment showing that none of those Plaintiffs were in the vicinity of either deployment.  *See id.* at 12–13.  On both points, Defendants disagree.  There is no need to belabor the point, as Plaintiffs' Fourth Amendment claims and the evidence disproving them have already been discussed at length.  *See* Defs.' Motion at 29–39; Defs.' Reply at 19–25.  Plaintiffs' suggestion that they can survive summary judgment despite video evidence disproving their claims is contradicted by the case they cite—*Robinson v. Pezzat*, 818 F.3d 1, 10 (D.C. Cir. 2016).

**CONCLUSION**

The Court should grant summary judgment in favor of Defendants.

Date: December 17, 2024.   Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

/s/ *Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

/s/ *Honey Morton*
HONEY MORTION [1019878]
Assistant Chief, Equity Section

/s/ *Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
GREGORY KETCHAM-COLWILL [1632660]
AMANDA C. PESCOVITZ [1735780]
MARCUS D. IRELAND [90005124]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 805-7512
Email: richard.sobiecki@dc.gov

*Counsel for Defendants*